**Nos. 24-1217, 24-1223 (Consolidated)**

# In the United States Court of Appeals for the Seventh Circuit

GRIFFITH FOODS INTERNATIONAL INC. AND GRIFFITH FOODS GROUP INC.,

*Plaintiffs-Appellees,*

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

*Defendant-Appellant.*

STERIGENICS U.S., LLC,

*Plaintiff-Appellee,*

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

*Defendant-Appellant.*

On Appeals from the United States District Court
for the Northern District of Illinois, Case Nos. 1:21-cv-6403, 1:21-cv-4581
The Honorable Mary M. Rowland

### JOINT CIRCUIT RULE 52(b) POSITION STATEMENT OF PLAINTIFFS-APPELLEES

James M. Davis
   *Counsel of Record*
PERKINS COIE LLP
1201 Third Avenue
Suite 4900
Seattle, WA 98101
(206) 359-8000
JamesDavis@perkinscoie.com

*Counsel for Plaintiffs-Appellees
Griffith Foods International Inc. f/k/a
Griffith Laboratories U.S.A., Inc., and
Griffith Foods Group Inc. f/k/a Griffith
Laboratories, Inc.*

February 13, 2026

Gary Feinerman
   *Counsel of Record*
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700
gary.feinerman@lw.com

*Counsel for Plaintiff-Appellee
Sterigenics U.S., LLC*

*(additional counsel on inside cover)*

Christopher B. Wilson
Kahin Gabriel Tong
PERKINS COIE LLP
110 N. Wacker Drive
Suite 3400
Chicago, IL 60606
(312) 324-8400
CWilson@perkinscoie.com
BDlatt@perkinscoie.com
KTong@perkinscoie.com

Sopen B. Shah
PERKINS COIE LLP
33 E. Main Street, Suite 201
Madison, WI 53703
(608) 663-7460
SShah@perkinscoie.com

Jonathan G. Hardin
PERKINS COIE LLP
700 13th Street, NW
Suite 800
Washington, DC 20005
(202) 654-6200
JHardin@perkinscoie.com

*Counsel for Plaintiffs-Appellees
Griffith Foods International Inc. f/k/a
Griffith Laboratories U.S.A., Inc., and
Griffith Foods Group Inc. f/k/a Griffith
Laboratories, Inc.*

Margaret A. Upshaw
Peter A. Prindiville
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
(202) 637-2200
maggie.upshaw@lw.com
peter.prindiville@lw.com

K. James Sullivan
Matthew A. Chiricosta
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
(216) 622-8200
KJSullivan@calfee.com
MChiricosta@calfee.com

Andrew G. May
Paul Walker-Bright
Steven F. Pflaum
NEAL GERBER & EISENBERG LLP
225 W. Randolph Street
Suite 2800
Chicago, IL 60606
(312) 269-8000
amay@nge.com
pwalkerbright@nge.com
spflaum@nge.com

*Counsel for Plaintiff-Appellee
Sterigenics U.S., LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

STATEMENT OF PROPOSED ACTION ..................................................... 1

I.  This Court Should Affirm The District Court's Judgment, Insofar As It Requires National Union To Defend Policyholders Through January 22, 2026, Because National Union Had A Duty To Defend Until January 23, 2026. .................................................................................................................. 2

    A.  An Insurer's Duty To Defend Turns On The State Of The Law At The Time A Policyholder Tenders Its Defense ........................................ 2

    B.  When Policyholders Sought Coverage, Then-Governing Illinois Law Required National Union To Assume The Defense ....................... 6

II.  Policyholders Are Entitled To Their Defense Costs Through January 22, 2026 Because National Union Acknowledged Its Duty To Defend While This Case Was Pending On Appeal. ................................................................. 11

CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American & Foreign Insurance Co. v. Jerry's Sport Center, Inc.*,
    2 A.3d 526 (Pa. 2010) ................................................................. 3

*Citizens Insurance Co. of America v. Mullins Food Products, Inc.*,
    135 F.4th 1082 (7th Cir. 2025) ................................................... 2

*Colbert v. Potter*,
    471 F.3d 158 (D.C. Cir. 2006) ................................................. 12

*Colliers International – Atlantic, LLC v. Maxum Indemnity Co.*,
    640 F. Supp. 3d 1343 (N.D. Ga. 2022) ................................. 3, 14

*Country Mutual Insurance Co. v. Bible Pork, Inc.*,
    42 N.E.3d 958 (Ill. App. 2015) ................................................. 6

*Country Mutual Insurance Co. v. Dahms*,
    58 N.E.3d 118 (Ill. App. 2016) ............................................. 2, 7

*Erie Insurance Exchange v. Imperial Marble Corp.*,
    957 N.E.2d 1214 (Ill. App. 2011) ............................................. 6

*General Agents Insurance Co. of America v. Midwest Sporting Goods
Co.*,
    828 N.E.2d 1092 (Ill. 2005) ............................................*passim*

*Griffith Foods International, Inc. v. National Union Fire Insurance Co.
of Pittsburgh, PA*,
    __ N.E.3d __, 2026 WL 181277 (Ill. 2026) ............................ 8

*Griffith Foods International Inc. v. National Union Fire Insurance Co.
of Pittsburgh, PA*,
    134 F.4th 483 (7th Cir. 2025) ................................................. 8, 9

*Insurance Co. of Illinois v. Markogiannakis*,
    544 N.E.2d 1082 (Ill. App. 1989) ............................... 2, 5, 8, 9, 13

*ITW Inc. v. Travelers Casualty & Surety Co.*,
    26 N.E.3d 421 (Ill. App. 2015) ................................................. 4

*Metropolitan Property & Casualty Insurance Co. v. Morrison*,
    951 N.E.2d 662 (Mass. 2011) ................................................. 3

**Page(s)**

*National Surety Corp. v. Immunex Corp.,*
297 P.3d 688 (Wash. 2013) ................................................................. 3

*Outboard Marine Corp. v. Liberty Mutual Insurance Co.,*
607 N.E.2d 1204 (Ill. 1992) ..................................................... 3, 7, 8, 9

*People v. Carpenter,*
888 N.E.2d 105 (Ill. 2008) ........................................................... 6, 8

*Scottsdale Indemnity Co. v. Village of Crestwood,*
673 F.3d 715 (7th Cir. 2012) ............................................................ 9

*Society of Mount Carmel v. National Ben Franklin Insurance Co. of
Illinois,*
682 N.E.2d 1180 (Ill. App. 1997)............................................. 3, 4, 5, 7

*State Farm Fire & Casualty Co. v. Yapejian,*
605 N.E.2d 539, 542 (Ill. App. 1992) ................................................. 6

*Steadfast Insurance Co. v. Caremark Rx, Inc.,*
869 N.E.2d 910 (Ill. App. 2007)...................................................... 11

*Title Industry Assurance Co., R.R.G. v. First American Title Insurance
Co.,*
853 F.3d 876 (7th Cir. 2017) ............................................................ 2

*United States v. Miller,*
832 F.3d 703 (7th Cir. 2016) .......................................................... 12

*Valley Forge Insurance Co. v. Swiderski Electronics, Inc.,*
834 N.E.2d 562 (Ill. App. 2005), *aff'd*, 860 N.E.2d 307 (Ill. 2006) ......................... 3

*W.C. Richards Co. v. Hartford Accident & Indemnity Co.,*
724 N.E.2d 63 (Ill. App. 1999)........................................................... 5

## OTHER AUTHORITIES

14 Jordan R. Plitt et al., *Couch on Insurance* (3d ed., Dec. 2025 update) ................... 4

14A Jordan R. Plitt et al., *Couch on Insurance* (3d ed., Dec. 2025
update) ............................................................................. 12

## STATEMENT OF PROPOSED ACTION

Pursuant to Circuit Rule 52(b), Plaintiffs-Appellees Griffith Foods International, Inc., Griffith Foods Group, Inc., and Sterigenics U.S., LLC ("Policyholders") submit this statement of their position as to the action this Court should take to complete the resolution of this appeal.

This Court should affirm the district court's judgment insofar as it provides that Defendant-Appellant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") owed Policyholders a duty to defend through January 22, 2026. On January 23, 2026, answering the question certified by this Court, the Illinois Supreme Court held that a permit or regulation authorizing emissions plays no role in assessing the application of a pollution exclusion within a standard-form commercial general liability policy. In so holding, the court expressly overruled longstanding precedent, applicable statewide, established by the Appellate Court of Illinois. While the Illinois Supreme Court's holding means that National Union *no longer* has a duty to defend, it confirms that at the time Policyholders tendered their defense, National Union *had* a duty to defend under then-controlling Illinois law, and that duty continued through January 22, 2026. As demonstrated below, the same result obtains because National Union belatedly (on the eve of oral argument before this Court) agreed to defend Policyholders in the Underlying Litigation.

Accordingly, Policyholders cannot seek future defense costs, nor can they seek indemnity from National Union for the over $450 million they already paid to settle the bulk of the Underlying Litigation. But they *are* entitled to the past defense costs

the district court correctly awarded. National Union still must honor its duty to defend.

**I.** **This Court Should Affirm The District Court's Judgment, Insofar As It Requires National Union To Defend Policyholders Through January 22, 2026, Because National Union Had A Duty To Defend Until January 23, 2026.**

    **A.** **An Insurer's Duty To Defend Turns On The State Of The Law At The Time A Policyholder Tenders Its Defense**

Under Illinois law, "the duty to defend arises at the time an insured gives its carrier notice of a claim potentially within the scope of the insurance policy, as opposed to the point at which a court later confirms that the insurer is obligated to defend its insured." *Citizens Ins. Co. of Am. v. Mullins Food Prods., Inc.*, 135 F.4th 1082, 1098 n.10 (7th Cir. 2025) (applying Illinois law). It follows that an insurer may not "define its duty to defend based on the outcome" of a later declaratory judgment action related to the insurer's coverage obligations. *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1103 (Ill. 2005). Instead, whether an insurer has a duty to defend is measured by the potential for coverage "at the time" the insured provides it notice of the underlying lawsuit. *Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 888 (7th Cir. 2017) (Illinois law).

Consistent with these principles, where, as here, "an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt *at the time the insurer is requested to defend.*" *Ins. Co. of Ill. v. Markogiannakis*, 544 N.E.2d 1082, 1094 (Ill. App. 1989) (emphasis added); *see also Country Mutual Insurance Co. v. Dahms*, 58 N.E.3d 118, 121, 131-32 (Ill. App. 2016) (holding that insurer had duty to defend because application of criminal-acts exclusion was not

"clear and free from doubt" "at the time the complaint was filed"). The pertinent inquiry thus turns on the law "in effect" at "the time [the] complaint [i]s presented" for defense. *Soc'y of Mount Carmel v. Nat'l Ben Franklin Ins. Co. of Ill.*, 682 N.E.2d 1180, 1187 n.1 (Ill. App. 1997). Even if "questions remain[] concerning whether the underlying claims were covered by the policies" under existing law, an insurer "remain[s] obligated to defend" until a court finds that the insurer "did not owe [the insured] a defense." *Midwest Sporting Goods*, 828 N.E.2d at 1104. Under this settled framework, the duty to defend continues "during the pendency" of an insurer's appeal of a trial court ruling finding a duty to defend. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 834 N.E.2d 562, 577 (Ill. App. 2005), *aff'd*, 860 N.E.2d 307 (Ill. 2006).[1]

The longstanding rule anchoring the duty-to-defend inquiry to the time an insured seeks a defense is not mere formalism, but serves a fundamental purpose. "An insurer's duty to defend its insured is much broader than its duty to indemnify." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1220 (Ill. 1992). Unlike the duty to indemnify, which "arises only after damages are fixed, the duty to

---

[1]    Courts applying other states' similar duty-to-defend rules likewise hold that, in this scenario, a declaration of noncoverage does not retroactively eliminate the insurer's duty to defend (and concurrent obligation to pay *past* defense costs incurred) during the period of uncertainty. *See Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 694 (Wash. 2013) ("After obtaining a declaration of noncoverage, an insurer 'will not be obligated to pay' *from that point forward*. Any other rule would be at odds with our observation that under a reservation of rights defense, 'the insured *receives* the defense promised'—at least until the determination of noncoverage." (citation omitted)); *Metro. Prop. & Cas. Ins. Co. v. Morrison*, 951 N.E.2d 662, 668 (Mass. 2011); *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 542 (Pa. 2010); *Colliers Int'l – Atl., LLC v. Maxum Indem. Co.*, 640 F. Supp. 3d 1343, 1358 (N.D. Ga. 2022) (Georgia law).

defend arises as soon as damages are sought" and requires an insurer to provide a defense in real time to an insured facing imminent harm from litigation that could possibly fall within its coverage. *Midwest Sporting Goods*, 828 N.E.2d at 1103; *see also* 14 Jordan R. Plitt et al., *Couch on Insurance* § 200:3 (3d ed., Dec. 2025 update) ("The distinction between the duty to defend and the duty to indemnify is based on the time when the duties are determined. The duty to defend arises prior to the completion of litigation, and therefore, insurers are required to meet their defense obligation before the scope of the insured's liability has been determined."). In other words, the duty to defend acts as "litigation insurance" designed to "protect[] the insured from the expense of defending suits brought against it." *ITW Inc. v. Travelers Cas. & Sur. Co.*, 26 N.E.3d 421, 426, 431 (Ill. App. 2015). That distinct coverage is gutted if an insurer refuses to provide a defense even when it is required to do so by controlling law.

Illinois law safeguards against this concern by requiring insurers to provide a defense unless it is clear, at the time the policyholder tenders its defense, that the underlying suit's claims are not even potentially within coverage under the law at that time. For example, in *Mount Carmel*, the Appellate Court of Illinois had applied binding California appellate court authority to hold that an insurer had a duty to defend. *See* 682 N.E.2d at 1183-84. Following that duty-to-defend determination, the California Supreme Court overruled the appellate authority on which the Illinois court had relied. *Id.* at 1187 n.1. The Appellate Court of Illinois held that this change in governing coverage law did not displace its previous duty-to-defend ruling,

reasoning that the insurer's "duty to defend arose at the time [the] complaint was presented" and, "at that time, [the overruled authority] was in effect." *Id.*[2]

Similarly, in *Markogiannakis*, while the Appellate Court of Illinois affirmed the trial court's ruling that an exclusion applied to negate indemnity coverage, it held that the insurer nevertheless had a duty to defend at the time its insured provided notice of the underlying suit. 544 N.E.2d at 1094. As the court explained, "[b]ecause of the necessity for a judicial construction" of the exclusion, its applicability "would not have been clear and free from doubt at the time [the insurer] was requested to defend the case." *Id.* The Appellate Court of Illinois thus remanded with instructions to determine the defense costs owed for the period before its ruling eliminated the possibility of coverage. *Id.* at 1095.

In sum, Illinois law holds that the duty to defend turns on the facts alleged in the underlying complaint and the law at the time an insured requests a defense, and that duty persists until the date on which a court squarely holds that there is no duty to defend.

---

[2]     In *W.C. Richards Co. v. Hartford Accident & Indemnity Co.*, the court held that subsequent state supreme court authority can unsettle a previous duty-to-defend ruling where "courts of review were … *silent* on the precise issue presented" when the insured sought a defense. 724 N.E.2d 63, 67 (Ill. App. 1999) (emphasis added). In so holding, the court distinguished *Mount Carmel* because, at the time the defense was sought in *Mount Carmel*, there was "precedent established in a decision rendered by" an appellate court that required an insurer to defend. *Id.* at 67-68. This case falls on the *Mount Carmel* side of the line because, when Policyholders tendered their defense, then-governing precedent from the Appellate Court of Illinois established that National Union owed them a defense. *See infra* at 6-9.

### B. When Policyholders Sought Coverage, Then-Governing Illinois Law Required National Union To Assume The Defense

When Policyholders notified National Union of the Underlying Litigation in February 2021, and when National Union refused to defend in April and June 2021, governing Illinois precedent squarely held that permitted emissions fell outside the pollution exclusion's reach. In *Erie Insurance Exchange v. Imperial Marble Corp.*, the court held that it was "arguably ambiguous as to whether the emission of hazardous materials in levels permitted by" the State fell within the scope of the pollution exclusion. 957 N.E.2d 1214, 1221 (Ill. App. 2011). Because courts "must resolve ambiguities in the complaint and policy in favor" of the insured, the court held that the insurer had a duty to defend. *Id.* And in *Country Mutual Insurance Co. v. Bible Pork, Inc.*, the court reaffirmed *Imperial Marble*, holding that the pollution exclusion did not apply to permitted emissions because "it [was] unclear whether permitted emissions constitute traditional environmental pollution that is excluded." 42 N.E.3d 958, 970 (Ill. App. 2015) (quoting *Imperial Marble*, 957 N.E.2d at 1221).

These two Appellate Court decisions established the law of Illinois and were binding on all circuit courts in the state unless and until there was a split of appellate authority or the Illinois Supreme Court overruled them. *See People v. Carpenter*, 888 N.E.2d 105, 111-12 (Ill. 2008) ("It is 'fundamental in Illinois that the decisions of an appellate court are binding precedent on all circuit courts regardless of locale.' Therefore, until [the Illinois Supreme Court] says otherwise, an applicable appellate court decision must be followed by the circuit courts of this state." (citations omitted)); *State Farm Fire & Cas. Co. v. Yapejian*, 605 N.E.2d 539, 542 (Ill. App. 1992)

(explaining that an appellate court decision "is binding on the circuit courts throughout the State" absent "controlling authority from [a circuit court's] home district").

The Illinois Supreme Court's January 23, 2026 decision in this case expressly overruled *Imperial Marble* and *Bible Pork*. In so doing, the Illinois Supreme Court "terminated" National Union's duty to defend because, "as of that moment," Illinois law changed and the pollution exclusion squarely applied. *Dahms*, 58 N.E.3d at 121. That said, by expressly changing what previously had been Illinois law, the Illinois Supreme Court's decision confirms that it was not "clear from the face of the underlying complaint that the facts alleged [did] not fall potentially within the policy's coverage" at the time Policyholders tendered their defense and National Union refused to defend. *Outboard Marine,* 607 N.E.2d at 1212; *see also Mount Carmel*, 682 N.E.2d at 1188 n.11. At the very least, the Illinois Supreme Court's decision demonstrates that there was uncertainty regarding the scope of the pollution exclusion. This uncertainty required National Union to defend Policyholders until the Illinois Supreme Court resolved the question. *See Midwest Sporting Goods*, 828 N.E.2d at 1104 (insurer "remain[s] obligated to defend" where "questions remain[] concerning whether the underlying claims were covered by the policies," until a court finds that the insurer "did not owe [the insured] a defense").

The history of this case confirms the point. This Court certified this question to the Illinois Supreme Court:

> In light of the Illinois Supreme Court's decision in *American States Insurance Co. v. Koloms*, [687 N.E.2d 72 (1997)], and mindful of

7

[*Imperial Marble*], what relevance, if any, does a permit or regulation authorizing emissions (generally or at particular levels) play in assessing the application of a pollution exclusion within a standard-form commercial general liability policy?

*Griffith Foods Int'l Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 134 F.4th 483, 493 (7th Cir. 2025). The Illinois Supreme Court answered by holding that "a permit or regulation authorizing emissions (generally or at any particular levels) has no relevance in assessing the application of a pollution exclusion within a standard-form commercial general liability policy." *Griffith Foods Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, __ N.E.3d __, 2026 WL 181277, at *6 (Ill. 2026). In so doing, and acknowledging that the Appellate Court of Illinois had twice held otherwise in *Imperial Marble* and *Bible Pork*, *id.* at *4, the Illinois Supreme Court explicitly "overruled" those decisions "[t]o the extent" they were "at odds with [its] conclusion" that permitted emissions fall within a standard pollution exclusion, *id.* at *6. The Illinois Supreme Court thus necessarily acknowledged that *Imperial Marble* and *Bible Pork* had been controlling Illinois law on the permitted-emissions question through January 22, 2026.

In the decade and a half after *Imperial Marble* was decided, no Illinois decision departed from or rejected its holding on permitted emissions, ensconcing *Imperial Marble* as governing Illinois law. *See Carpenter*, 888 N.E.2d at 111-12. Accordingly, when National Union refused to defend in 2021, it plainly was not "clear from the face of the underlying complaint that the facts alleged d[id] not fall potentially within the policy's coverage." *Outboard Marine*, 607 N.E.2d at 1212; *see also Markogiannakis*, 544 N.E.2d at 1094 (construing exclusion clause in favor of coverage

8

in light of its "well-recognized ambiguity" and "the necessity for a judicial construction of" the clause). To the contrary, then-controlling law made clear that National Union *did* have a duty to defend, making its refusal to defend "unjustifiable." *Outboard Marine*, 607 N.E.2d at 1212.

The record bears this out. The district court ordered National Union to provide a defense in light of then-governing Illinois law. And this Court likewise acknowledged that "*Imperial Marble* could be read to suggest that legally authorized emissions—those that occur pursuant to a regulatory permit—may not constitute the type of traditional environmental pollution that *Koloms* envisioned." *Griffith Foods*, 134 F.4th at 491-92. This "uncertainty" was the impetus for the certified question. *Id.* at 492.[3] By explicitly overruling *Imperial Marble*—which, under *Carpenter* and *Yapejian*, had been governing law of Illinois until that point—the Illinois Supreme Court proved the prior uncertainty and confirmed that the pollution exclusion's application here was, at a minimum, not "clear and free from doubt" when Policyholders sought a defense. *See Markogiannakis*, 544 N.E.2d at 1094.

Accordingly, National Union had a duty to defend Policyholders in the Underlying Litigation, and it should be required to pay the judgment entered by the

---

[3]  This Court also noted potential "tension between *Imperial Marble*" and *Scottsdale Indemnity Co. v. Village of Crestwood*, 673 F.3d 715 (7th Cir. 2012). *Griffith Foods*, 134 F.4th at 492. To the extent *Scottsdale* raised "questions" regarding the scope of the policies, the presence of that uncertainty simply confirms that National Union "remain[ed] obligated to defend" until a court found that it "did not owe [Policyholders] a defense." *Midwest Sporting Goods*, 828 N.E.2d at 1104; *see also Markogiannakis*, 544 N.E.2d at 1094 (exclusion's application must be "clear and free from doubt" to excuse failure to defend).

district court for past defense costs. National Union cannot escape that duty by arguing that the Illinois Supreme Court's decision negated its duty to defend for the time period prior to January 23, 2026. That is not only contrary to settled Illinois law, but also would reward National Union for its refusal to honor its duty to defend, putting it in a better position than had it complied.

As explained, Illinois law holds that an insurer's duty to defend a potentially covered claim continues until a court determines the claim is not covered. *Midwest Sporting Goods,* 828 N.E.2d at 1104. And an insurer that incurs defense costs for a potentially covered claim may not recoup those costs in the event it ultimately prevails in a declaratory judgment action unless the policy expressly provides for such recovery. *Id.* (holding that Illinois law "refuse[s] to permit an insurer to recover defense costs pursuant to a reservation of rights absent an express provision to that effect in the insurance contract between the parties"). This principle is significant because the National Union policies at issue here have no such provision. JA225-275.

True enough, National Union has paid nothing toward Policyholders' defense and has nothing to recoup. But, as shown above, National Union was obligated to assume Policyholders' defense and pay for defense costs through January 22, 2026. Had National Union provided the defense it was contractually obligated to provide, there is no question it would properly bear Policyholders' defense costs incurred through January 22, 2026. National Union cannot be allowed to avoid those costs merely because it disregarded that duty. Without a recoupment provision, Illinois law as articulated by the Illinois Supreme Court in *Midwest Sporting Goods* requires

National Union to pay the non-recoverable sums it was obligated to pay up to the point when the Illinois Supreme Court in this case overruled previously controlling law.

This case is distinguishable from cases where a lower court erroneously applied *then-existing* law in finding a duty to defend. In those cases, an insurer is allowed to seek reimbursement of defense costs following the reversal of the erroneous duty to defend finding. *See Steadfast Ins. Co. v. Caremark Rx, Inc.*, 869 N.E.2d 910, 914 (Ill. App. 2007) (explaining that "no uncertainty concerning coverage ever existed" where circuit court simply erred "as a matter of law"). Here, the district court's duty-to-defend order did not erroneously apply then-governing law in finding a duty to defend—to the contrary, the district court faithfully applied *Imperial Marble* and *Bible Pork*. RSA14-18, ECF No. 42. The Illinois Supreme Court changed the law by explicitly overruling *Imperial Marble* and *Bible Pork*. Because the district court did not erroneously find a duty to defend under then-controlling law on pollution exclusions, that duty continued until the change in law.

## II. Policyholders Are Entitled To Their Defense Costs Through January 22, 2026 Because National Union Acknowledged Its Duty To Defend While This Case Was Pending On Appeal.

The district court's judgments should be affirmed on an independent ground: National Union agreed to defend Policyholders during the pendency of this appeal, thus acknowledging it was possible the claims in the Underlying Litigation could fall within coverage.

On September 20, 2024—three business days before oral argument in this Court—National Union informed Policyholders that "[d]uring the pendency of National Union's appeal to the Seventh Circuit Court of Appeals, National Union agrees to participate in [Policyholders'] defense in the Underlying Lawsuits," "subject to a full and complete reservation of its rights under the policies and at law." Ex. A at 1-2; *see also* Ex. C at 1-2 (same).[4] National Union reiterated this commitment on July 11, 2025, while this Court's certified question was pending before the Illinois Supreme Court. *See* Ex. B at 2; Ex. D at 2.

By agreeing to defend Policyholders during the pendency of this appeal, National Union necessarily acknowledged the possibility that it had a duty to defend. *See* 14A Jordan R. Plitt et al., *Couch on Insurance* § 202:39 (3d ed., Dec. 2025 update) (explaining that insurer defends under a reservation of rights "when coverage is in doubt"); *Midwest Sporting Goods*, 828 N.E.2d at 1103 (explaining that an "insurer tenders a defense or pays defense costs pursuant to a reservation of rights" to protect itself against uncertainty). National Union's acknowledgement, standing alone,

---

[4]   "Ex." refers to the exhibits attached hereto. Because National Union waited until September 2024 to send these letters, long after the district court entered judgment, they are not part of the district court record. Policyholders request that this Court exercise its inherent authority to supplement the record with the letters. *See United States v. Miller*, 832 F.3d 703, 704 (7th Cir. 2016) (noting that this Court has "allowed exceptions" to general principle that evidence may not be presented "for the first time to the court of appeals," and considering new evidence on appeal where its "authenticity" was not in doubt); *Colbert v. Potter*, 471 F.3d 158, 165-66 (D.C. Cir. 2006) (exercising inherent authority to supplement the record on appeal rather than remand). Alternatively, Policyholders respectfully request that this Court remand this case to the district court for the limited purpose of allowing the district court to make Exhibits A-D part of the record.

shows that it was not "clear and free from doubt" that the Underlying Litigation did not fall within coverage when Policyholders sought a defense. *Markogiannakis*, 544 N.E.2d at 1094.

This point is established by *Midwest Sporting Goods*, where (as noted above) the Illinois Supreme Court held that an insurer who had agreed to provide a defense under a reservation of rights is not entitled to recoup past defense costs following a court's determination that no duty to defend existed. 828 N.E.2d at 1104. The insurer there (Gainsco) agreed to defend its insured (Midwest) under a reservation of rights. *Id.* at 1094-95. In a subsequent declaratory judgment action, the trial court held that Gainsco owed no duty to defend and awarded Gainsco reimbursement of the defense costs paid under the reservation of rights. *Id.* at 1095. The Illinois Supreme Court reversed the reimbursement award, holding that an insurer remains obligated to provide a defense under its reservation of rights until a court's determination of no coverage:

> We agree that when an insurer tenders a defense or pays defense costs pursuant to a reservation of rights, the insurer is protecting itself at least as much as it is protecting its insured. Thus, we cannot say that an insured is unjustly enriched when its insurer tenders a defense in order to protect its own interests, *even if it is later determined that the insurer did not owe a defense*.

*Id.* at 1103 (emphasis added).

Thus, an insurer who has agreed to defend under a reservation of rights may not seek reimbursement of defense costs from its insured following a court's determination of no coverage "absent an express provision to that effect in the insurance contract between the parties." *Id.* at 1104. Applying that rule, the Illinois

13

Supreme Court concluded that "[b]ecause Gainsco's obligation to defend continued until the trial court found that Gainsco did not owe Midwest a defense, Gainsco [was] not entitled to reimbursement of defense costs paid pending the trial court's order in the declaratory judgment action." *Id.* "The fact that the trial court ultimately found that the underlying claims against Midwest were not covered by the Gainsco policies [did] not entitle Gainsco to reimbursement of its defense costs." *Id.*

*Midwest Sporting Goods* demonstrates that when an insurer agrees to defend under policies that have no recoupment provision, as National Union did here, it commits to paying for its insured's defense costs even if it reserves its rights and even if a court subsequently holds that the claims are not covered.[5] National Union therefore remained obligated to defend Policyholders under the reservation of rights until a final determination of no coverage. *See id.* The fact that the reservation-of-rights letters purport to reserve a right to seek reimbursement of defense costs is of no significance; as noted, *Midwest Sporting Goods* makes clear that any reimbursement provision must appear in the policy itself, not in a reservation-of-

---

[5] While *Midwest Sporting Goods* focuses on reimbursement of defense costs already expended, its holding logically extends to defense costs that remain unpaid. As National Union's letters recognize, an insurer who agrees to defend under a reservation of rights must provide a defense *and* pay for defense costs. *See* Ex. A at 6 (agreeing to pay for defense costs on behalf of Policyholders). Declining to apply *Midwest Sporting Goods* to unpaid defense costs would promote egregious behavior where, as here, an insurer agrees to defend under a reservation of rights but without actually providing a defense by paying for it. *See Colliers Int'l*, 640 F. Supp. 3d at 1358 n.12 (agreeing with policyholder's assertion that "if an insurer cannot recoup defense costs paid under a reservation of right by relying on a subsequent declaration of non-coverage, then *a fortiori*, it cannot fail to pay defense costs while it operates under a reservation of rights" (citation omitted)).

rights letter. *Id.* Because the National Union policies at issue contain no such provision, *see* JA225-275, National Union was obligated to defend Policyholders until the Illinois Supreme Court's decision on January 23, 2026. This provides an independent ground for affirming the district court's judgment.

## CONCLUSION

This Court should affirm the district court's holding that National Union had (through January 22, 2026) a duty to defend Policyholders in the Underlying Litigation in light of *Imperial Marble* and *Bible Pork*, which were then-binding precedent of the Appellate Court of Illinois. The same holding is supported by National Union's September 2024 agreement to assume Policyholders' defense under a reservation of rights and its July 2025 reaffirmation of that agreement.

As previously briefed and argued, this Court should also reject National Union's arguments that the district court erred in denying dismissal under Rule 12(b)(7), and, as to Sterigenics U.S., that the district court erred in concluding that Sterigenics U.S. is an insured for purposes of the duty to defend and in finding Sterigenics U.S.'s costs reasonable. The judgment should be affirmed.

Dated: February 13, 2026

 /s/ James M. Davis
James M. Davis
PERKINS COIE LLP
1201 Third Avenue
Suite 4900
Seattle, WA 98101
(206) 359-8000
JamesDavis@perkinscoie.com

Christopher B. Wilson
Kahin Gabriel Tong
PERKINS COIE LLP
110 N. Wacker Drive
Suite 3400
Chicago, IL 60606
(312) 324-8400
CWilson@perkinscoie.com
BDlatt@perkinscoie.com
KTong@perkinscoie.com

Sopen B. Shah
PERKINS COIE LLP
33 E. Main Street, Suite 201
Madison, WI 53703
(608) 663-7460
SShah@perkinscoie.com

*Counsel for Plaintiffs-Appellees*
*Griffith Foods International Inc. f/k/a*
*Griffith Laboratories U.S.A., Inc., and*
*Griffith Foods Group Inc. f/k/a Griffith*
*Laboratories, Inc.*

Respectfully submitted,

 /s/ Gary Feinerman
Gary Feinerman
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 777-7110
gary.feinerman@lw.com

Margaret A. Upshaw
Peter A. Prindiville
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
(202) 637-2200
maggie.upshaw@lw.com
peter.prindiville@lw.com

K. James Sullivan
Matthew A. Chiricosta
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
(216) 622-8200
KJSullivan@calfee.com
MChiricosta@calfee.com

*Counsel for Plaintiff-Appellee*
*Sterigenics U.S., LLC*

Jonathan G. Hardin
PERKINS COIE LLP
700 13th Street, NW
Suite 800
Washington, DC 20005
(202) 654-6200
JHardin@perkinscoie.com

*Counsel for Plaintiffs-Appellees*
*Griffith Foods International Inc. f/k/a*
*Griffith Laboratories U.S.A., Inc., and*
*Griffith Foods Group Inc. f/k/a Griffith*
*Laboratories, Inc.*

Andrew G. May
Paul Walker-Bright
Steven F. Pflaum
NEAL GERBER & EISENBERG LLP
225 W. Randolph Street
Suite 2800
Chicago, IL 60606
(312) 269-8000
amay@nge.com
pwalkerbright@nge.com
spflaum@nge.com

*Counsel for Plaintiff-Appellee*
*Sterigenics U.S., LLC*

**CERTIFICATE OF SERVICE**

I, Gary Feinerman, hereby certify that on February 13, 2026, I caused the foregoing Joint Circuit Rule 52(b) Position Statement of Plaintiffs-Appellees to be electronically filed with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, which constitutes service on all counsel of record, registered filing users, pursuant to Federal Rule of Appellate Procedure 25(c)(2) and Circuit Rule 25(a).

s/ *Gary Feinerman*
Gary Feinerman
*Counsel for Plaintiff-Appellee*
*Sterigenics U.S., LLC*

# ADDENDUM

## TABLE OF CONTENTS

| Exhibit | Description |
|---------|-------------|
| A | September 20, 2024 Letter from AIG Property Casualty on behalf of National Union Fire Insurance Company of Pittsburgh, Pa., to Kahin Gabriel Tong on behalf of Griffith Laboratories, Inc. and Griffith Laboratories U.S.A., Inc. |
| B | July 11, 2025 Letter from AIG Property Casualty on behalf of National Union Fire Insurance Company of Pittsburgh, Pa., to James Davis on behalf of Griffith Laboratories, Inc. and Griffith Laboratories U.S.A., Inc. |
| C | September 20, 2024 Letter from AIG Property Casualty on behalf of National Union Fire Insurance Company of Pittsburgh, Pa., to K. James Sullivan on behalf of Sterigenics U.S., LLC |
| D | July 11, 2025 Letter from AIG Property Casualty on behalf of National Union Fire Insurance Company of Pittsburgh, Pa., to K. James Sullivan on behalf of Sterigenics U.S., LLC |

EXHIBIT A



AIG Property Casualty
PO Box 10006
Shawnee Mission, KS 66225
www.aig.com

Beverly A. McCurry
Complex Director
Complex Casualty Claims
T 856-912-9273
Beverly.McCurry@aig.com

September 20, 2024

**VIA EMAIL (KTong@perkinscoie.com)**

Kahin Gabriel Tong, Esq.
Perkins Coie LLP
110 North Wacker Drive, Suite 3400
Chicago, IL 60606

|  |  |  |
|---|---|---|
| RE: | Named Insureds: | **Griffith Laboratories, Inc.** |
|  |  | **Griffith Laboratories U.S.A., Inc.** |
|  | Lawsuits: | **See Appendix A** |
|  | Policy Nos.: | **GLA 9456632 RA (9/30/82 – 9/30/83)** |
|  |  | **GLA 9457058 RA (9/30/83 – 9/30/84)** |
|  |  | **GLA 1940011 RA (9/30/84 – 9/30/85)** |
|  | Claim No.: | **7060777757US** |

Dear Mr. Tong:

AIG Claims, Inc. is the authorized claims handling representative of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), which issued the above-referenced policies to, among others, Griffith Laboratories, Inc. and Griffith Laboratories U.S.A., Inc. ("collectively, "Griffith"). We acknowledge receipt of 55 underlying lawsuits originally filed in the Circuit Court of Cook County, Illinois and alleging claims against Griffith (among other named defendants) relative to ethylene oxide ("EtO") emissions from the Willowbrook facility[1]. The 55 underlying lawsuits are identified on **Appendix A** attached hereto and are collectively referred to herein as the "Underlying Lawsuits." I am the claims director handling this claim and all future correspondence should be directed to me.

We understand that you are coverage counsel for Griffith. Accordingly, we direct this communication to your attention. If this letter should be directed to another party, please advise us immediately.

The purpose of this letter is to advise you of National Union's coverage position with respect to coverage for Griffith in relation to the Underlying Lawsuits. As explained more fully below, National Union agrees to participate in Griffith's defense in the Underlying Lawsuits, subject to a full and complete reservation of its rights under the policies and at law.

---

[1] We understand some of these lawsuits may have been, or may be in the future, removed to Federal Court. In addition, the *Jafari* lawsuit was originally part of the Consolidated Lawsuits discussed herein.

As you are aware, National Union and Griffith have been involved in coverage litigation[2] regarding National Union's obligations under the above-referenced Policies with respect to substantially similar allegations as to the same Willowbrook facility raised in over 500 consolidated lawsuits filed in Cook County, Illinois under Case No. 18-L-010475 (the "Consolidated Lawsuits"). National Union continues to contest its obligations, including a duty to defend Griffith, and has taken steps to appeal the rulings made by the United States District Court for the Northern District of Illinois. During the pendency of the appeal to the Seventh Circuit, National Union agrees to participate in Griffith's defense in the Underlying Lawsuits. However, in the event the District Court's rulings are overturned on appeal or any court determines that National Union does not owe any or certain defense or coverage obligations under the National Union policies with respect to the allegations in the Consolidated Lawsuits, National Union reserves the right to withdraw from the defense of the Underlying Lawsuits and to recoup all sums incurred in the defense of Griffith.

In considering Griffith's request for coverage related to the Underlying Lawsuits, we have carefully reviewed the insurance policies referenced above, as well as the allegations contained in the Underlying Lawsuits. No other policies were considered. If you assert a right to coverage under another policy issued by any other member company of AIG Property Casualty, Inc., please provide notice pursuant to the notice provisions contained in that policy.

## FACTUAL CIRCUMSTANCES

The Underlying Lawsuits allege that Griffith designed and operated two ethylene oxide ("EtO") medical device sterilization facilities in Willowbrook, Illinois between April 12, 1984 and May 14, 1999. The lawsuits maintain that plaintiffs lived, worked, and recreated near the Willowbrook facilities and unknowingly breathed excessive amounts of EtO emitted from the facilities on a routine and continuous basis for years, resulting in injuries.

The lawsuits assert that, at all times, Griffith knew that EtO is dangerous to human health and knowingly chose not to warn the Willowbrook residents of the dangers of EtO. The lawsuits maintain that Griffith knowingly failed to implement emission control equipment to regulate the emissions of EtO from the Willowbrook facilities.

The lawsuits allege that as a result of the alleged conduct, plaintiffs inhaled dangerous amounts of EtO and developed diseases and conditions incurring medical bills, lost wages, pain and suffering, emotional distress, disability, disfigurement, a reduced life expectancy, and loss of normal life.

The lawsuits assert the following causes of action against Griffith: negligence; willful and wonton conduct; civil battery; public nuisance; and in concert liability.

---

[2] *Griffith Foods Int'l, Inc., et al. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, N.D. Ill. No. 1:21-cv-6403; *Griffith Foods Int'l, Inc., et al. v. Zurich Am. Ins. Co., et al.,* Cook Cnty. Cir. Ct. No. 2023-CH-00782; and *Zurich Am. Ins. Co., et al. v. Sterigenics U.S., LLC, et al.,* Del. Super. Ct. C.A. No. N23C-02-232 MAA (currently stayed).

AIG

Kahin Gabriel Tong
Perkins Coie LLP
September 20, 2024
Page 3

## **THE POLICIES**

National Union issued to Griffith Laboratories, Inc. Commercial General Liability Policy No. GLA 9456632 RA, effective September 30, 1982 to September 30, 1983; No. GLA 9456632 RA, effective September 30, 1983 to September 30, 1984; and No. GLA 1940011 RA, effective September 30, 1984 to September 30, 1985 (collectively, the "Policies").

Attached to this letter for your reference is **Appendix B**, which sets forth relevant provisions of the Policies.  By referencing specific policy provisions, we do not intend to indicate any other policy provision is unimportant or irrelevant, and National Union expressly reserves its rights to rely on any other provisions in the Policies.  Please refer to your copies of the Policies for their complete terms and conditions.

Presently, we have been unable to locate a copy of a National Union Policy No. GLA 9456632 RA issued to Griffith and effective September 30, 1982 to September 30, 1983.  Please provide us with your copy of this policy, if you have located one.  National Union continues to search for this policy and will advise if it is able to locate it.  In the event that Griffith likewise does not possess a copy of this policy, we request that Griffith continue to search and provide us with any documents referencing the policy that it discovers.

## **RESERVATION OF RIGHTS**

The Policies potentially apply to pay all sums an insured is legally obligated to pay as damages because of "bodily injury" caused by an "occurrence." [3]  The Policies define "bodily injury" to mean bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.  To the extent that the Underlying Lawsuits do not seek damages for "bodily injury" as defined, the Policies would not provide coverage.  National Union reserves its right to limit or deny coverage on this basis.

The Policies potentially apply to pay all sums an insured is legally obligated to pay as damages because of "bodily injury" taking place during the policy period.  To qualify as covered "bodily injury" under the Policies, the alleged bodily injury, sickness or disease must occur during the applicable policy period.  Specifically, unless the Underlying Lawsuits seek damages for injury occurring to a plaintiff that took place between September 30, 1982 and September 30, 1985, the Policies are not implicated.  The Underlying Lawsuits do not specify when each claimant allegedly suffered injury as a result of their exposure to EtO.  National Union reserves its right to limit or deny coverage on this basis.

---

[3] The Policies also potentially apply to damages because of "property damage."  However, the Underlying Lawsuits do not allege damages because of "property damage."  Accordingly, we do not discuss potential "property damage" coverage in this letter.  If Griffith believes "property damage" coverage is potentially implicated by the Underlying Lawsuits, please advise and explain in writing.

AIG

Kahin Gabriel Tong
Perkins Coie LLP
September 20, 2024
Page 4

The Policies only provide coverage for "bodily injury" caused by an "occurrence." The Policies define "occurrence" to mean an accident, continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured. The Underlying Lawsuits allege that Griffith knew EtO emissions were dangerous, knowingly placed its facilities near residential communities, and knowingly failed to implement emissions reduction technology to prevent harm to nearby residents. Thus, the emissions and resulting injuries do not appear to be accidental. To the extent the Underlying Lawsuits allege "bodily injury" that was not caused by an "occurrence," the Policies would not provide coverage. National Union reserves its right to limit or deny coverage on these grounds.

Exclusion (f) (the "Pollution Exclusion") of the Policies provides that the Policies do not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental. The Underlying Lawsuits allege liability arising out of EtO emissions from the Willowbrook facilities into the atmosphere. The Underlying Lawsuits allege that EtO is toxic and causes cancer. As a toxic carcinogen, EtO constitutes a pollutant, because it is an irritant, contaminant, toxic chemical and/or gas. Moreover, the sudden and accidental exception to the Pollution Exclusion does not apply, because Griffith's continuous emission of EtO from the Willowbrook facilities were allegedly intentional and an expected part of its business, as evidenced by Griffith's permit application. Therefore, National Union reserves its right to limit or deny coverage pursuant to the Pollution Exclusion.

The Policies also potentially apply to "personal injury" sustained by any person and arising out of the "named insured's" business, within the "policy territory." "Personal injury" is defined to include wrongful entry or eviction or other invasion of the right of private occupancy, committed during the policy period. Specifically, unless the Underlying Lawsuits seek damages for "personal injury" occurring to a plaintiff and the "personal injury" occurred between September 30, 1982 and September 30, 1985, the Policies are not implicated. National Union reserves its right to limit or deny coverage on these grounds.

Exclusion (2) of the "personal injury" and "advertising injury" coverage part precludes coverage for "personal injury" arising out of the willful violation of a penal statute or ordinance committed by or with knowledge or consent of the "insured." National Union reserves its right to limit or deny coverage pursuant to this exclusion.

Coverage under the Policies may also be limited by the existence of other insurance. To the extent other insurance is available, National Union's coverage obligations, if any, may be limited.

AIG

Kahin Gabriel Tong
Perkins Coie LLP
September 20, 2024
Page 5

The Underlying Lawsuits seek punitive damages.  To the extent punitive damages do not constitute covered damages or are otherwise uninsurable under applicable law, the Policies do not apply. National Union reserves its rights to deny coverage, in whole or in part, on this basis.

To the extent the Underlying Lawsuits allege "bodily injury" both during the policy period of one or more of the Policies and the policy period of any other insurance policies available to Griffith, applicable law may allow National Union to seek contribution on a pro rata basis from the other insurers on the risk.  National Union reserves its rights on this basis.

Lastly, as indicated above, National Union and Griffith are currently litigating National Union's coverage obligations under the Policies with respect to substantially similar allegations brought against Griffith related to the same Willowbrook facility in the Consolidated Lawsuits.  If a court finds that National Union is not obligated to provide defense costs and/or coverage to Griffith with respect to the Consolidated Lawsuits, National Union reserves its right to withdraw from Griffith's defense in the Underlying Lawsuits and to seek reimbursement of its defense costs incurred in defense of Griffith in the Underlying Lawsuits.

## REQUESTS FOR INFORMATION

To assist National Union in its ongoing investigation of the Underlying Lawsuits and its evaluation of coverage, please provide the following information and materials at your earliest convenience, and on an ongoing basis:

1.  All pleadings, discovery responses, and expert reports in the Underlying Lawsuits.

2.  All documents reflecting settlement negotiations related to any of the Underlying Lawsuits.

3.  All defense counsel evaluations of and reports regarding the claims alleged in the Underlying Lawsuits.

4.  Documentation sufficient to identify all primary insurance policies potentially applicable to the Underlying Lawsuits, including copies of such policies.

5.  Documentation sufficient to identify all excess and umbrella insurance policies potentially applicable to the Underlying Lawsuits, including copies of such policies.

6.  Documentation reflecting which, if any, Underlying Insurance has been exhausted.

7.  All communication with other insurers related to insurance coverage for the Underlying Lawsuits.

Kahin Gabriel Tong
Perkins Coie LLP
September 20, 2024
Page 6

## **CONCLUSION**

In summary, National Union agrees to participate in Griffith's defense of the Underlying Lawsuits under the Policies, subject to a full and complete reservation of its rights under the Policies and at law, including its right to withdraw from the defense and recoup its defense costs, subject to the outcome of a pending appeal to the Seventh Circuit on relevant rulings related to the Policies.

At your earliest convenience, please contact us to discuss our participation in the defense. Presently, it is our understanding that Griffith has retained the law firm Perkins Coie to defend Griffith in the Underlying Lawsuits.

Please be advised that National Union's obligation to participate in Griffith's defense is limited to reasonable and necessary costs and expenses. Specifically with respect to attorneys' fees, National Union's duty to reimburse defense costs is limited to the rates National Union actually pays to attorneys retained in the ordinary course of business for the defense of similar actions in Cook County, Illinois. Defense counsel will also be asked to comply with National Union's internal billing guidelines and provide timely reports.

Our coverage determination is based on the information presently available to us. This letter is not and should not be construed as a waiver of any terms, conditions, exclusions, or other provisions of the Policies or any other policy issued by any AIG member company. National Union expressly reserves all rights and defenses under its policies, under law, or in equity, including the right to assert defenses to any claims for coverage, for any reason, based on any policy term, condition, exclusion, or other provision, whether or not specifically referenced above.

After you review this letter, we can schedule a conference call to further discuss National Union's participation in Griffith's defense in the Underlying Lawsuits.

Very truly yours,

*Beverly A. McCurry*

Beverly A. McCurry


cc: Bradley H. Dlatt, Esq. (*via email, bdlatt@perkinscoie.com*)

# APPENDIX A

## List of Underlying Lawsuits

|    | Caption | Case No. | Venue |
|----|---------|----------|-------|
| 1  | *Jafari v. Sterigenics U.S., LLC, et al.*[4] | 2020L008737 | Circuit Court of Cook County, IL |
| 2  | *Kavanagh v. Sterigenics U.S., LLC, et al.* | 2023L005721 | Circuit Court of Cook County, IL |
| 3  | *Werich v. Sterigenics U.S., LLC, et al.* | 2023L005767 | Circuit Court of Cook County, IL |
| 4  | *D'Angelo v. Sterigenics U.S., LLC, et al.* | 2023L005702 | Circuit Court of Cook County, IL |
| 5  | *Cordin v. Sterigenics U.S., LLC, et al.* | 2023L005781 | Circuit Court of Cook County, IL |
| 6  | *Tamm v. Sterigenics U.S., LLC, et al.* | 2023L005701 | Circuit Court of Cook County, IL |
| 7  | *Herrera v. Sterigenics U.S., LLC, et. al.* | 2023L006563 | Circuit Court of Cook County, IL |
| 8  | *Pokorny v. Sterigenics U.S., LLC, et. al.* | 2023L009519 | Circuit Court of Cook County, IL |
| 9  | *Poteraske v. Sterigenics U.S., LLC, et. al.* | 2023L009449 | Circuit Court of Cook County, IL |
| 10 | *Cibelli v. Sterigenics U.S., LLC, et. al.* | 2023L011216 | Circuit Court of Cook County, IL |
| 11 | *Lindsey Johnson v. Sterigenics U.S., LLC, et. al.* | 2023L011218 | Circuit Court of Cook County, IL |
| 12 | *Suzanne Johnson v. Sterigenics U.S., LLC et al.* | 2023L011210 | Circuit Court of Cook County, IL |
| 13 | *Joseph Claffy v. Sterigenics U.S., LLC, et. al.* | 2023L011492 | Circuit Court of Cook County, IL |
| 14 | *Nash v. Sterigenics U.S., LLC, et. al.* | 2023L011473 | Circuit Court of Cook County, IL |
| 15 | *Rosenwinkel v. Sterigenics U.S., LLC, et. al.* | 2023L011475 | Circuit Court of Cook County, IL |
| 16 | *Carvell v. Sterigenics U.S., LLC, et al.* | 2024L000548 | Circuit Court of Cook County, IL |
| 17 | *Mark DePaolo  v. Sterigenics U.S., LLC, et al.* | 2024L000550 | Circuit Court of Cook County, IL |
| 18 | *Nancy DePaolo v. Sterigenics U.S., LLC, et al.* | 2024L000656 | Circuit Court of Cook County, IL |
| 19 | *Jung v. Sterigenics U.S., LLC, et al.* | 2024L000672 | Circuit Court of Cook County, IL |
| 20 | *Lee v. Sterigenics U.S., LLC, et al.* | 2024L000678 | Circuit Court of Cook County, IL |
| 21 | *Polanic v. Sterigenics U.S., LLC, et al.* | 2024L000662 | Circuit Court of Cook County, IL |
| 22 | *Popp v. Sterigenics U.S., LLC, et al.* | 2024L000659 | Circuit Court of Cook County, IL |
| 23 | *Trent v. Sterigenics U.S., LLC, et al.* | 2024L000547 | Circuit Court of Cook County, IL |
| 24 | *Zurbano v. Sterigenics U.S., LLC, et al.* | 2024L001355 | Circuit Court of Cook County, IL |
| 25 | *Sulley v. Sterigenics U.S., LLC, et al.* | 2024L005129 | Circuit Court of Cook County, IL |
| 26 | *Musillami v. Sterigenics U.S., LLC, et al.* | 2024L005122 | Circuit Court of Cook County, IL |
| 27 | *Koklas v. Sterigenics U.S., LLC, et al.* | 2024L005122 | Circuit Court of Cook County, IL |
| 28 | *Schnell v. Sterigenics U.S., LLC, et al.* | 2024L005125 | Circuit Court of Cook County, IL |
| 29 | *Schwall v. Sterigenics U.S., LLC, et al.* | 2024L005124 | Circuit Court of Cook County, IL |
| 30 | *Wilhelmi v. Sterigenics U.S., LLC, et al.* | 2024L005399 | Circuit Court of Cook County, IL |
| 31 | *Singh v. Sterigenics U.S., LLC, et al.* | 2024L006669 | Circuit Court of Cook County, IL |
| 32 | *Rakocevic v. Sterigenics U.S., LLC, et al.* | 2024L006671 | Circuit Court of Cook County, IL |
| 33 | *Ford v. Sterigenics U.S., LLC, et al.* | 2024L006668 | Circuit Court of Cook County, IL |

[4] As Griffith has represented to AIG, the *Jafari* lawsuit was originally part of the Consolidated Lawsuits but is an opt-out from the Consolidated Lawsuits global settlement.

|    | Caption | Case No. | Venue |
|----|---------|----------|-------|
| 34 | *Pett v. Sterigenics U.S., LLC, et al.* | 2024L006708 | Circuit Court of Cook County, IL |
| 35 | *Chadha v. Sterigenics U.S., LLC, et al.* | 2024L007008 | Circuit Court of Cook County, IL |
| 36 | *Carol Nails v. Sterigenics U.S., LLC, et al.* | 2024L007004 | Circuit Court of Cook County, IL |
| 37 | *Rogers v. Sterigenics U.S., LLC, et al.* | 2024L007549 | Circuit Court of Cook County, IL |
| 38 | *Diann Nails v. Sterigenics U.S., LLC, et al.* | 2024L007550 | Circuit Court of Cook County, IL |
| 39 | *Kunze v. Sterigenics U.S., LLC, et al.* | 2024L007594 | Circuit Court of Cook County, IL |
| 40 | *Hickey v. Sterigenics U.S., LLC, et al.* | 2024L007595 | Circuit Court of Cook County, IL |
| 41 | *D. Darnall v. Sterigenics U.S., et al.* | 2024L007731 | Circuit Court of Cook County, IL |
| 42 | *D. Grossman v. Sterigenics U.S., et al.* | 2024L008179 | Circuit Court of Cook County, IL |
| 43 | *Stout v. Sterigenics U.S., LLC, et al.* | 2024L008772 | Circuit Court of Cook County, IL |
| 44 | *Boerwinkle v. Sterigenics U.S., LLC, et al.* | 2024L008770 | Circuit Court of Cook County, IL |
| 45 | *Considine v. Sterigenics U.S., LLC, et al.* | 2024L008774 | Circuit Court of Cook County, IL |
| 46 | *Nieto v. Sterigenics U.S., LLC, et al.* | 2024L008778 | Circuit Court of Cook County, IL |
| 47 | *Griffin v. Sterigenics U.S., LLC, et al.* | 2024L008764 | Circuit Court of Cook County, IL |
| 48 | *Kizys v. Sterigenics U.S., LLC, et al.* | 2024L008768 | Circuit Court of Cook County, IL |
| 49 | *Kukuc v. Sterigenics U.S., LLC, et al.* | 2024L008782 | Circuit Court of Cook County, IL |
| 50 | *Leuck v. Sterigenics U.S., LLC, et al.* | 2024L009137 | Circuit Court of Cook County, IL |
| 51 | *Ouardi v. Sterigenics U.S., LLC, et al.* | 2024L009185 | Circuit Court of Cook County, IL |
| 52 | *Reynoso v. Sterigenics U.S., LLC, et al.* | 2024L009254 | Circuit Court of Cook County, IL |
| 53 | *Gelvich v. Sterigenics U.S., LLC, et al.* | 2024L009262 | Circuit Court of Cook County, IL |
| 54 | *Wagner v. Sterigenics U.S., LLC, et al.* | 2024L009290 | Circuit Court of Cook County, IL |
| 55 | *Mayor v. Sterigenics U.S., LLC, et al.* | 2024L009532 | Circuit Court of Cook County, IL |

## APPENDIX B

## <u>RELEVANT EXCERPTS OF THE NATIONAL UNION POLICIES</u>

**I.      COVERAGE A—BODILY INJURY LIABILITY
        COVERAGE B—PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the insured all sums which the **insured** shall become legally obligated to pay as damages because of

A.      **bodily injury** or
B.      **property damage**

to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

*        *        *

(f)      to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

*        *        *

## DEFINITIONS

*        *        *

**"bodily injury"** means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

*        *        *

**"insured"** means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each **insured** against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

\*     \*     \*

**"named insured"** means the person or organization named in Item 1. of the declarations of this policy;

\*     \*     \*

**"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**;

\*     \*     \*

**"property damage"** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period;

\*     \*     \*

### BROAD FORM COMPREHENSIVE GENERAL LIABILITY ENDORSEMENT

\*     \*     \*

**II.     PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE**

**(A)**     The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**(B)**     This insurance does not apply:

\*     \*     \*

**(2)**     to **personal injury** or **advertising injury** arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured;

\*          \*          \*

**(D)     Additional Definitions**

\*          \*          \*

"**Personal injury**" means injury arising out of one or more of the following offenses committed during the policy period:

**1.**     False arrest, detention, imprisonment, or malicious prosecution;

**2.**     Wrongful entry or conviction or other invasion of the right of private occupancy;

**3.**     A publication or utterance

    **(a)**     Of a libel or slander or other defamatory or disparaging material, or

    **(b)**     In violation of an individual's right of privacy;

Except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the **name insured** shall not be deemed **personal injury**.

EXHIBIT B



AIG Property Casualty
PO Box 10006
Shawnee Mission, KS 66225
www.aig.com

Beverly McCurry
Assistant Vice President
Complex Casualty Claims
T 856-912-9273
Beverly.McCurry@aig.com

July 11, 2025

**VIA EMAIL (James.Davis@perkinscoie.com)**

James Davis, Esq.
Perkins Coie LLP
110 North Wacker Drive, 34th Foor
Chicago, IL 60606

| | | |
|---|---|---|
| RE: | Named Insureds: | **Griffith Laboratories, Inc.** |
| | | **Griffith Laboratories U.S.A., Inc.** |
| | Lawsuits: | **See Appendix A** |
| | Policy Nos.: | **GLA 9456632 RA (9/30/82 – 9/30/83)** |
| | | **GLA 9457058 RA (9/30/83 – 9/30/84)** |
| | | **GLA 1940011 RA (9/30/84 – 9/30/85)** |
| | Claim No.: | **7060777757US** |

Dear Mr. Davis:

AIG Claims, Inc. is the authorized claims handling representative of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), which issued the above-referenced policies to, among others, Griffith Laboratories, Inc. and Griffith Laboratories U.S.A., Inc. (collectively, "Griffith"). We acknowledge receipt of 54 underlying lawsuits originally filed in the Circuit Court of Cook County, Illinois and alleging claims against Griffith (among other named defendants) related to ethylene oxide ("EtO") emissions from the Willowbrook facility. The 54 underlying lawsuits are identified on **Appendix A** attached hereto and are collectively referred to here as the "Underlying Lawsuits."

I am the adjuster handling this claim and all future correspondence should be directed to me. We understand that you are coverage counsel for Griffith. Accordingly, we direct this communication to your attention. If this letter should be directed to another party, please advise us immediately.

I write to advise you of National Union's position regarding coverage for Griffith in relation to the Underlying Lawsuits. As explained more fully below, National Union agrees to participate in Griffith's defense in the Underlying Lawsuits, subject to a full and complete reservation of its rights under the policies and at law.

As you are aware, National Union and Griffith are involved in coverage litigation regarding National Union's obligations under the above-referenced Policies with respect to substantially similar allegations as to EtO emissions from the same Willowbrook facility raised in more than 500 consolidated lawsuits filed in the Circuit Court of Cook County, Illinois under Case No. 18-

**AIG**

James Davis
Perkins Coie LLP
July 11, 2025
Page 2

L-010475 (the "Consolidated Lawsuits").[1]  National Union continues to contest its obligations, including a duty to defend Griffith, and has appealed the judgment of the United States District Court for the Northern District of Illinois.  During the pendency of National Union's appeal to the Seventh Circuit Court of Appeals, National Union agrees to participate in Griffith's defense in the Underlying Lawsuits.  But in the event the District Court's rulings—including its duty to defend ruling—are overturned on appeal or any court determines that National Union does not owe any or certain defense or coverage obligations under the National Union Policies with respect to the allegations in the Consolidated Lawsuits, National Union reserves the right to withdraw from the defense of the Underlying Lawsuits and to recoup all sums incurred in the defense of Griffith. National Union also reserves its rights in the event that the court in the Cook County case issues a no-coverage ruling, where Griffith and Sterigenics seek to amend the complaint to add these policies.

In considering Griffith's request for coverage related to the Underlying Lawsuits, we have carefully reviewed the insurance policies referenced above, as well as the allegations contained in the Underlying Lawsuits.  No other policies were considered for purposes of this letter. Contemporaneous with this letter, we will separately issue a letter regarding Griffith's request for coverage for the Underlying Lawsuits under certain other umbrella and excess policies issued by other AIG member companies.  If you assert a right to coverage under any another policy issued by any other member company of AIG Property Casualty, Inc., please provide notice pursuant to the notice provisions contained in that policy.

## FACTUAL CIRCUMSTANCES

The Underlying Lawsuits allege that Griffith designed and operated two ethylene oxide medical device sterilization facilities in Willowbrook, Illinois between April 12, 1984 and May 14, 1999. The lawsuits maintain that plaintiffs lived, worked, and recreated near the Willowbrook facilities and unknowingly breathed excessive amounts of EtO emitted from the facilities routinely and continuously for years.  This allegedly resulted in injuries.

While the complaints in the Underlying Lawsuits amount to many pages, they generally allege that (i) Griffith knew that EtO is dangerous to human health and knowingly chose not to warn the Willowbrook residents of EtO's dangers; (ii) Griffith knowingly failed to implement emission control equipment to regulate the emissions of EtO from the Willowbrook facilities; and (iii) as a result of the alleged conduct, plaintiffs inhaled dangerous amounts of EtO and developed diseases and conditions, incurring medical bills, lost wages, pain and suffering, emotional distress, disability, disfigurement, a reduced life expectancy, and loss of normal life.  The lawsuits assert various causes of action against Griffith, including: negligence; willful and wonton conduct; civil battery; public nuisance; and in concert liability.

---

[1] *Griffith Foods Int'l, Inc., et al. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, N.D. Ill. No. 1:21-cv-6403; *Griffith Foods Int'l, Inc., et al. v. Zurich Am. Ins. Co., et al.,* Cook Cnty. Cir. Ct. No. 2023-CH-00782; and *Zurich Am. Ins. Co., et al. v. Sterigenics U.S., LLC, et al.,* Del. Super. Ct. C.A. No. N23C-02-232 MAA (currently stayed).

AIG

## THE POLICIES

National Union issued to Griffith Laboratories, Inc. Commercial General Liability Policy No. GLA 9456632 RA, effective September 30, 1982 to September 30, 1983; No. GLA 9456632 RA, effective September 30, 1983 to September 30, 1984; and No. GLA 1940011 RA, effective September 30, 1984 to September 30, 1985 (collectively, the "Policies"). Attached to this letter for your reference is **Appendix B**, which quotes relevant provisions of the Policies. By referencing specific policy provisions, we do not intend to suggest any other policy provision is unimportant or irrelevant, and National Union expressly reserves its rights to rely on any other provisions in the Policies. Please refer to your copies of the Policies for their complete terms and conditions.

We have been unable to locate a copy of a National Union Policy No. GLA 9456632 RA issued to Griffith and effective September 30, 1982 to September 30, 1983. Please provide us with your copy of this policy, if you have located one. National Union continues to search for this policy and will advise you if it is able to locate it. In the event that Griffith likewise does not possess a copy of this policy, we request that Griffith continue to search and provide us with any documents referencing the policy that it discovers.

## RESERVATION OF RIGHTS

The Policies potentially apply to pay all sums an insured is legally obligated to pay as damages because of "bodily injury" caused by an "occurrence."[2] The Policies define "bodily injury" to mean bodily injury, sickness or disease sustained by any person that occurs during the policy period, including death at any time resulting therefrom. To the extent that the Underlying Lawsuits do not seek damages for "bodily injury" as defined, the Policies would not provide coverage. National Union reserves its right to limit or deny coverage on this basis.

The Policies potentially apply to pay all sums an insured is legally obligated to pay as damages because of "bodily injury" taking place during the policy period. To qualify as covered "bodily injury" under the Policies, the alleged bodily injury, sickness or disease must occur during the applicable policy period. Specifically, unless the Underlying Lawsuits seek damages for bodily injury occurring to a plaintiff between September 30, 1982 and September 30, 1985, the Policies are not implicated. The Underlying Lawsuits do not specify when each claimant allegedly suffered injury as a result of their exposure to EtO. Thus, National Union reserves its right to limit or deny coverage on this basis.

The Policies provide coverage only for "bodily injury" caused by an "occurrence." The Policies define "occurrence" to mean an accident, continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of

---

[2] The Policies also potentially apply to damages because of "property damage." However, the Underlying Lawsuits do not allege damages because of "property damage." Accordingly, we do not discuss potential "property damage" coverage in this letter. If Griffith believes "property damage" coverage is potentially implicated by the Underlying Lawsuits, please advise and explain in writing.

the insured. The Underlying Lawsuits allege that Griffith knew EtO emissions were dangerous, knowingly placed its facilities near residential communities, and knowingly failed to implement emissions reduction technology to prevent harm to nearby residents. Thus, the EtO emissions and resulting injuries do not appear to be accidental. To the extent the Underlying Lawsuits allege "bodily injury" that was not caused by an "occurrence," the Policies would not provide coverage. National Union reserves its right to limit or deny coverage on these grounds.

Exclusion (f) (the "Pollution Exclusion") of the Policies provides that the Policies do not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental. The Underlying Lawsuits allege liability arising out of EtO emissions from the Willowbrook facilities into the atmosphere. The Underlying Lawsuits allege that EtO is toxic and causes cancer. As a toxic carcinogen, EtO constitutes a pollutant, because it is an irritant, contaminant, toxic chemical and/or gas. Moreover, the sudden and accidental exception to the Pollution Exclusion does not apply, because Griffith's continuous emission of EtO from the Willowbrook facilities were allegedly intentional and an expected part of its business, as evidenced by Griffith's permit application. Therefore, National Union reserves its right to limit or deny coverage pursuant to the Pollution Exclusion.

The Policies also potentially apply to "personal injury" sustained by any person and arising out of the "named insured's" business, within the "policy territory." "Personal injury" is defined to include wrongful entry or eviction or other invasion of the right of private occupancy, committed during the policy period. Specifically, unless the Underlying Lawsuits seek damages for "personal injury" occurring to a plaintiff between September 30, 1982 and September 30, 1985, the Policies are not implicated. National Union reserves its right to limit or deny coverage on these grounds.

Exclusion (2) of the "personal injury" and "advertising injury" coverage part precludes coverage for "personal injury" arising out of the willful violation of a penal statute or ordinance committed by or with knowledge or consent of the "insured." National Union reserves its right to limit or deny coverage pursuant to this exclusion.

Coverage under the Policies may also be limited by the existence of other insurance. To the extent other insurance is available, National Union's coverage obligations, if any, may be limited.

The Underlying Lawsuits seek punitive damages. To the extent punitive damages do not constitute covered damages or are otherwise uninsurable under applicable law, the Policies do not apply. National Union reserves its rights to deny coverage, in whole or in part, on this basis.

To the extent the Underlying Lawsuits allege "bodily injury" both during the policy period of one or more of the Policies and the policy period of any other insurance policies available to Griffith,

applicable law may allow National Union to seek contribution or indemnification on a *pro rata* basis from the other insurers on the risk.  National Union reserves its rights on this basis.

Lastly, as indicated above, National Union and Griffith are currently litigating National Union's coverage obligations under the Policies with respect to substantially similar allegations brought against Griffith related to EtO emissions from the same Willowbrook facility in the Consolidated Lawsuits.  If a court finds that National Union is not obligated to provide defense costs and/or coverage to Griffith with respect to the Consolidated Lawsuits, National Union reserves its right to withdraw from Griffith's defense in the Underlying Lawsuits and to seek reimbursement of its defense costs incurred in defense of Griffith in the Underlying Lawsuits.

## <u>REQUESTS FOR INFORMATION</u>

To assist National Union in its ongoing investigation of the Underlying Lawsuits and its evaluation of coverage, please provide the following information and materials at your earliest convenience, and on an ongoing basis:

1.  All pleadings, discovery responses (including by third parties), and expert reports in the Underlying Lawsuits.

2.  All documents, including board minutes and board materials, reflecting settlement negotiations and any settlement agreements related to any of the Underlying Lawsuits.

3.  All evaluations, including by defense counsel, of and reports regarding the claims alleged in the Underlying Lawsuits.

4.  All communications with defense counsel regarding the claims and defenses in the Underlying Lawsuits.

5.  Documentation sufficient to identify all primary insurance policies potentially applicable to the Underlying Lawsuits, including copies of such policies.

6.  Documentation sufficient to identify all excess and umbrella insurance policies potentially applicable to the Underlying Lawsuits, including copies of such policies.

7.  Documentation reflecting which, if any, Underlying Insurance has been exhausted.

8.  All communications with other insurers related to insurance coverage for the Underlying Lawsuits.

9.  All documents and communications reflecting or discussing the operational dates of the Willowbrook facility at issue in the Underlying Lawsuits.



James Davis
Perkins Coie LLP
July 11, 2025
Page 6

10.     All permits, such as but not limited to, operating permits, construction permits, and emissions-related permits, for the Willowbrook facility at issue in the Underlying Lawsuits, and documents and communications related to those permits.

11.     All documents concerning the EtO sterilization processes at the Willowbrook facility at issue in the Underlying Lawsuits.

## **<u>CONCLUSION</u>**

In summary, National Union agrees to participate in Griffith's defense of the Underlying Lawsuits under the Policies, subject to a full and complete reservation of its rights under the Policies and at law, including its right to withdraw from the defense and recoup its defense costs, subject to the outcome of a pending appeal to the Seventh Circuit on relevant rulings related to the Policies or if any other court determines that National Union does not owe any or certain defense or coverage obligations under the National Union Policies with respect to the allegations in the Consolidated Lawsuits.

At your earliest convenience, please contact us to discuss our participation in the defense. Presently, it is our understanding that Griffith has retained the law firm Perkins Coie to defend Griffith in the Underlying Lawsuits. Please be advised that National Union's obligation to participate in Griffith's defense is limited to reasonable and necessary costs and expenses. Specifically with respect to attorneys' fees, National Union's duty to reimburse defense costs is limited to the rates National Union actually pays to attorneys retained in the ordinary course of business for the defense of similar actions in Cook County, Illinois. Defense counsel will also be asked to comply with National Union's internal billing guidelines and provide timely reports.

Our coverage determination is based on the information available to us now. This letter is not and should not be construed as a waiver of any terms, conditions, exclusions, or other provisions of the Policies or any other policy issued by any AIG member company. National Union expressly reserves all rights and defenses under its policies, under law, or in equity, including the right to assert defenses to any claims for coverage, for any reason, based on any policy term, condition, exclusion, or other provision, whether or not specifically referenced above.

After you review this letter, we can schedule a call to further discuss National Union's participation in Griffith's defense in the Underlying Lawsuits.

Very truly yours,

Beverly D. McCurry

Beverly McCurry

## APPENDIX A

### List of Underlying Lawsuits

|   | Caption | Case No. | Venue |
|---|---------|----------|-------|
| 1 | *Federico v. Sterigenics U.S., et al.* | 2024L009824 | Circuit Court of Cook County, IL |
| 2 | *Ellis v. Sterigenics U.S., et al.* | 2024L010102 | Circuit Court of Cook County, IL |
| 3 | *Griffin, Jr. v. Sterigenics U.S., et al.* | 2024L010081 | Circuit Court of Cook County, IL |
| 4 | *Pister v. Sterigenics U.S., et al.* | 2024L010133 | Circuit Court of Cook County, IL |
| 5 | *Dahlstrand v. Sterigenics U.S., et al.* | 2024L010268 | Circuit Court of Cook County, IL |
| 6 | *Podlesiecka v. Sterigenics U.S., et al.* | 2024L010273 | Circuit Court of Cook County, IL |
| 7 | *Podio v. Sterigenics U.S., et al.* | 2024L010607 | Circuit Court of Cook County, IL |
| 8 | *Lambke v. Sterigenics U.S., et al.* | 2024L010620 | Circuit Court of Cook County, IL |
| 9 | *Burgonio v. Sterigenics U.S., LLC, et al.* | 2024L013806 | Circuit Court of Cook County, IL |
| 10 | *Yaqoub v. Sterigenics U.S., LLC, et al.* | 2024L013408 | Circuit Court of Cook County, IL |
| 11 | *Powers v. Sterigenics U.S., LLC, et al.* | 2024L010954 | Circuit Court of Cook County, IL |
| 12 | *Peloso v. Sterigenics U.S., LLC, et al.* | 2024L010957 | Circuit Court of Cook County, IL |
| 13 | *Galinskiene v. Sterigenics U.S., LLC, et al.* | 2024L011289 | Circuit Court of Cook County, IL |
| 14 | *Carpenter v. Sterigenics U.S., LLC, et al.* | 2024L011423 | Circuit Court of Cook County, IL |
| 15 | *Sticken v. Sterigenics U.S., LLC, et al.* | 2024L011425 | Circuit Court of Cook County, IL |
| 16 | *Feller v. Sterigenics U.S., LLC, et al.* | 2024L011422 | Circuit Court of Cook County, IL |
| 17 | *Spear v. Sterigenics U.S., LLC, et al.* | 2024L012253 | Circuit Court of Cook County, IL |
| 18 | *Randall v. Sterigenics U.S., LLC, et al.* | 2024L012254 | Circuit Court of Cook County, IL |
| 19 | *Feller v. Sterigenics U.S., LLC, et al.* | 2024L012251 | Circuit Court of Cook County, IL |
| 20 | *Simonetti v. Sterigenics U.S., LLC, et al.* | 2024L012328 | Circuit Court of Cook County, IL |
| 21 | *McGinley v. Sterigenics U.S., LLC, et al.* | 2024L012387 | Circuit Court of Cook County, IL |
| 22 | *Bleka v. Griffith Foods Int'l Inc., et al.* | 2024L012454 | Circuit Court of Cook County, IL |
| 23 | *Fink v. Griffith Foods Int'l Inc., et al.* | 2024L012569 | Circuit Court of Cook County, IL |
| 24 | *Angotti v. Griffith Foods Int'l Inc., et al.* | 2024L012649 | Circuit Court of Cook County, IL |
| 25 | *Dorich v. Griffith Foods Int'l Inc., et al.* | 2024L012648 | Circuit Court of Cook County, IL |
| 26 | *Pilipowski v. Griffith Foods Int'l Inc., et al.* | 2024L012647 | Circuit Court of Cook County, IL |
| 27 | *Boots v. Griffith Foods Int'l Inc., et al.* | 2024L013114 | Circuit Court of Cook County, IL |
| 28 | *Burgess v. Griffith Foods Int'l Inc., et al.* | 2024L013113 | Circuit Court of Cook County, IL |
| 29 | *Heinzel v. Griffith Foods Int'l Inc., et al.* | 2024L013204 | Circuit Court of Cook County, IL |
| 30 | *Martino v. Griffith Foods Int'l Inc., et al.* | 2024L013254 | Circuit Court of Cook County, IL |
| 31 | *Mara v. Griffith Foods Int'l Inc., et al.* | 2024L013339 | Circuit Court of Cook County, IL |
| 32 | *Jansa v. Griffith Foods Int'l Inc., et al.* | 2024L013482 | Circuit Court of Cook County, IL |
| 33 | *Panages v. Griffith Foods Int'l Inc., et al.* | 2024L013521 | Circuit Court of Cook County, IL |
| 34 | *Painter v. Griffith Foods Int'l Inc., et al.* | 2024L013544 | Circuit Court of Cook County, IL |
| 35 | *Ryan v. Griffith Foods Int'l Inc., et al.* | 2024L013616 | Circuit Court of Cook County, IL |

|  | Caption | Case No. | Venue |
|---|---|---|---|
| 36 | *Bates v. Griffith Foods Int'l Inc., et al.* | 2024L013647 | Circuit Court of Cook County, IL |
| 37 | *Callen v. Griffith Foods Int'l Inc., et al.* | 2024L013665 | Circuit Court of Cook County, IL |
| 38 | *Cristallo v. Griffith Foods Int'l Inc., et al.* | 2024L013759 | Circuit Court of Cook County, IL |
| 39 | *Giannini v. Griffith Foods Int'l Inc., et al.* | 2024L013721 | Circuit Court of Cook County, IL |
| 40 | *Peterson v. Griffith Foods Int'l Inc., et al.* | 2024L013762 | Circuit Court of Cook County, IL |
| 41 | *Kowalski v. Griffith Foods Int'l Inc., et al.* | 2024L013839 | Circuit Court of Cook County, IL |
| 42 | *Green v. Griffith Foods Int'l Inc., et al.* | 2024L013829 | Circuit Court of Cook County, IL |
| 43 | *Polz v. Griffith Foods Int'l Inc., et al.* | 2024L013856 | Circuit Court of Cook County, IL |
| 44 | *Ritchie v. Griffith Foods Int'l Inc., et al.* | 2024L013884 | Circuit Court of Cook County, IL |
| 45 | *Arenberg v. Griffith Foods Int'l Inc., et al.* | 2024L013951 | Circuit Court of Cook County, IL |
| 46 | *Williams v. Griffith Foods Int'l Inc., et al.* | 2024L013949 | Circuit Court of Cook County, IL |
| 47 | *Leuck v. Griffith Foods Int'l Inc., et al.*[3] | 2024L012500 | Circuit Court of Cook County, IL |
| 48 | *Suarino v. Griffith Foods Int'l Inc., et al.* | 2024L014032 | Circuit Court of Cook County, IL |
| 49 | *Schuenemann v. Griffith Foods Int'l Inc.* | 2024L014067 | Circuit Court of Cook County, IL |
| 50 | *Hazucka v. Griffith Foods Int'l Inc.* | 2024L013835 | Circuit Court of Cook County, IL |
| 51 | *Pollmann v. Griffith Foods Int'l Inc.* | 2024L014124 | Circuit Court of Cook County, IL |
| 52 | *Rush v. Sterigenics U.S., LLC, et al.* | 2025L001065 | Circuit Court of Cook County, IL |
| 53 | *Rosenwinkel v. Sterigenics U.S., LLC, et al.*[4] | 2025L003611 | Circuit Court of Cook County, IL |
| 54 | *Tyk v. Sterigenics U.S., LLC, et al.* | 2025L004144 | Circuit Court of Cook County, IL |

[3] This case was previously included in National Union's September 20, 2024 coverage position letter to Griffith under a different case number (Cook Cnty. Cir. Ct. No. 2024L009137). We understand that case was voluntarily dismissed and re-filed, with the case number identified herein.

[4] This was also previously included in National Union's September 20, 2024 coverage position letter to Griffith under a different case number (Cook Cnty. Cir. Ct. No. 2023L011475). We understand that case was voluntarily dismissed and re-filed, with the case number identified herein.

## APPENDIX B

## <u>RELEVANT EXCERPTS OF THE NATIONAL UNION POLICIES</u>

**I.    COVERAGE A—BODILY INJURY LIABILITY**
**COVERAGE B—PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the insured all sums which the **insured** shall become legally obligated to pay as damages because of

A.    **bodily injury** or
B.    **property damage**

to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

\*        \*        \*

(f)    to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

\*        \*        \*

## **DEFINITIONS**

\*        \*        \*

**"bodily injury"** means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

\*        \*        \*

**"insured"** means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each **insured** against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

\*     \*     \*

**"named insured"** means the person or organization named in Item 1. of the declarations of this policy;

\*     \*     \*

**"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**;

\*     \*     \*

**"property damage"** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period;

\*     \*     \*

### BROAD FORM COMPREHENSIVE GENERAL LIABILITY ENDORSEMENT

\*     \*     \*

**II.     PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE**

**(A)**     The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**(B)**     This insurance does not apply:

\*     \*     \*

**(2)**     to **personal injury** or **advertising injury** arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured;

*          *          *

**(D)    Additional Definitions**

*          *          *

"**Personal injury**" means injury arising out of one or more of the following offenses committed during the policy period:

**1.**     False arrest, detention, imprisonment, or malicious prosecution;

**2.**     Wrongful entry or conviction or other invasion of the right of private occupancy;

**3.**     A publication or utterance

    **(a)**     Of a libel or slander or other defamatory or disparaging material, or

    **(b)**     In violation of an individual's right of privacy;

Except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the **name insured** shall not be deemed **personal injury**.

EXHIBIT C



September 20, 2024

AIG Property Casualty
PO Box 10006
Shawnee Mission, KS 66225
www.aig.com

Beverly A. McCurry
Complex Director
Complex Casualty Claims
T 856-912-9273
Beverly.McCurry@aig.com

**VIA EMAIL (kjsullivan@calfee.com)**
K. James Sullivan
Calfee, Halter & Griswold, LLC
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607

|  |  |  |
|---|---|---|
| RE: | Named Insureds: | **Griffith Laboratories, Inc.** |
|  |  | **Griffith Laboratories U.S.A., Inc.** |
|  | **Lawsuits:** | **See Appendix A** |
|  | **Policy Nos.:** | **GLA 9456632 RA (9/30/82 – 9/30/83)** |
|  |  | **GLA 9457058 RA (9/30/83 – 9/30/84)** |
|  |  | **GLA 1940011 RA (9/30/84 – 9/30/85)** |
|  | **Claim No.:** | **2612693967US** |

Dear Mr. Sullivan:

AIG Claims, Inc. is the authorized claims handling representative of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), which issued the above-referenced policies to, among others, Griffith Laboratories, Inc. and Griffith Laboratories U.S.A., Inc. ("collectively, "Griffith").  I am the claims director handling this claim and all future correspondence should be directed to me.

We understand that you are coverage counsel for Sterigenics U.S., LLC ("Sterigenics"). Accordingly, we direct this communication to your attention.  If, however, this letter should be directed to another party, please advise us immediately.

Griffith previously advised AIG Claims, Inc. of 55 pending underlying lawsuits that seek damages from Griffith and Sterigenics arising out of releases of ethylene oxide ("EtO") from facilities operated by Griffith and Sterigenics in and near Willowbrook, Illinois.  Specifically, attached hereto as **Appendix A** is a list of 55 underlying lawsuits.  The 55 underlying lawsuits are collectively referred to herein as the "Underlying Lawsuits."

Griffith requests insurance coverage from National Union for the Underlying Lawsuits.  It is unclear if Sterigenics also requests coverage for these lawsuits.  However, since each of the 55 lawsuits names Sterigenics as a defendant and the insurers are aware of the lawsuits, National Union takes this opportunity to advise Sterigenics of their coverage position relative to the underlying lawsuits.  As explained more fully below, National Union agrees to participate in

K. James Sullivan
Calfee, Halter & Griswold, LLC
September 20, 2024
Page 2

Sterigenics' defense in the Underlying Lawsuits, subject to a full and complete reservation of its rights under the policies and at law.

As you are aware, National Union and Sterigenics have been involved in coverage litigation[1] regarding National Union's obligations under the above-referenced Policies with respect to substantially similar allegations as to the same Willowbrook facility raised in over 500 consolidated lawsuits filed in Cook County, Illinois under Case No. 18-L-010475 (the "Consolidated Lawsuits"). National Union continues to contest its obligations, including a duty to defend Sterigenics, and has taken steps to appeal the rulings made by the United States District Court for the Northern District of Illinois. During the pendency of the appeal to the Seventh Circuit, National Union agrees to participate in the defense of the Underlying Lawsuits. However, in the event the District Court's rulings are overturned on appeal or any court determines that National Union does not owe any or certain defense or coverage obligations under the National Union policies with respect to the allegations in the Consolidated Lawsuits, National Union reserves the right to withdraw from the defense of the Underlying Lawsuits and to recoup all sums incurred in the defense of Sterigenics.

In considering coverage for the Underlying Lawsuits, we have carefully reviewed the insurance policies referenced above, as well as the allegations contained in the Underlying Lawsuits. No other policies were considered. If you assert a right to coverage under another policy issued by any other member company of AIG Property Casualty, Inc., please provide notice pursuant to the notice provisions contained in that policy.

## FACTUAL CIRCUMSTANCES

The Underlying Lawsuits allege that Sterigenics and its predecessors operated two ethylene oxide ("EtO") medical device sterilization facilities in Willowbrook, Illinois. The Underlying Lawsuits maintain that plaintiffs lived, worked, and recreated near the Willowbrook facilities and unknowingly breathed excessive amounts of EtO emitted from the facilities on a routine and continuous basis for years, resulting in injuries.

The Underlying lawsuits assert that, at all times, Sterigenics knew that the EtO emitting from the facilities would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons inhaling it. The Underlying Lawsuits assert that Sterigenics knew that EtO is dangerous to human health and knowingly chose not to warn the Willowbrook residents of the dangers of EtO. The lawsuits maintain that Sterigenics knowingly failed to implement emission control equipment to regulate the emissions of EtO from the Willowbrook facilities.

---

[1] *Sterigenics et al. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, N.D. Ill. No. 1:21-cv-4581; *Griffith Foods Int'l, Inc., et al. v. Zurich Am. Ins. Co., et al.,* Cook Cnty. Cir. Ct. No. 2023-CH-00782; and *Zurich Am. Ins. Co., et al. v. Sterigenics U.S., LLC, et al.,* Del. Super. Ct. C.A. No. N23C-02-232 MAA (currently stayed).

K. James Sullivan
Calfee, Halter & Griswold, LLC
September 20, 2024
Page 3

The lawsuits allege that as a result of the alleged conduct, plaintiffs inhaled dangerous amounts of EtO and developed diseases and conditions incurring medical bills, lost wages, pain and suffering, emotional distress, disability, disfigurement, a reduced life expectancy, and loss of normal life.

The lawsuits assert the following causes of action against Sterigenics: negligence; willful and wanton conduct; civil battery; public nuisance; and in concert liability.

## <u>THE POLICIES</u>

National Union issued to Griffith Laboratories, Inc. Commercial General Liability Policy No. GLA 9456632 RA, effective September 30, 1982 to September 30, 1983; No. GLA 9456632 RA, effective September 30, 1983 to September 30, 1984; and No. GLA 1940011 RA, effective September 30, 1984 to September 30, 1985 (collectively, the "Policies").

Attached to this letter for your reference is **Appendix B**, which sets forth relevant provisions of the Policies. By referencing specific policy provisions, we do not intend to indicate any other policy provision is unimportant or irrelevant, and National Union expressly reserves its rights to rely on any other provisions in the Policies. Please refer to your copies of the Policies for their complete terms and conditions.

Presently, we have been unable to locate a copy of a National Union Policy No. GLA 9456632 RA issued to Griffith and effective September 30, 1982 to September 30, 1983. Please provide us with your copy of this policy, if you have located one. National Union continues to search for this policy and will advise if it is able to locate it. In the event that Griffith likewise does not possess a copy of this policy, we request that Griffith continue to search and provide us with any documents referencing the policy that it discovers.

## <u>RESERVATION OF RIGHTS</u>

As an initial matter, the Policies provide coverage to an insured. In relevant part, the Policies provide that "Named Insured" means the organization, including any subsidiary thereof, named in item 1 of the declarations and also includes any other company which is acquired or formed by the named insured during the policy period and over which the named insured maintains ownership or financial control, provided this insurance does not apply to any such newly acquired or formed company which is an insured under any other liability or indemnity policy or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability. Such insurance as may be afforded a newly acquired or formed company shall terminate within sixty days of its acquisition of formation unless reported to the company within said sixty days. The Policies also provide automatic coverage for newly formed or acquired companies by the named insured during the policy periods, but that coverage expires 90 days from acquisition or formation. Item 1 of the Policies, as amended by endorsement, identifies Griffith Laboratories U.S.A., Inc. and Griffith Laboratories, Inc. as Named Insureds. National Union reserves its rights to deny coverage, to the extent Sterigenics is not an insured under the Policies.

K. James Sullivan
Calfee, Halter & Griswold, LLC
September 20, 2024
Page 4

The Policies potentially apply to pay all sums an insured is legally obligated to pay as damages because of "bodily injury" caused by an "occurrence." [2]   The Policies define "bodily injury" to mean bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.  To the extent that the Underlying Lawsuits do not seek damages for "bodily injury" as defined, the Policies would not provide coverage. National Union reserves its right to limit or deny coverage on this basis.

The Policies potentially apply to pay all sums an insured is legally obligated to pay as damages because of "bodily injury" taking place during the policy period.  To qualify as covered "bodily injury" under the Policies, the alleged bodily injury, sickness or disease must occur during the applicable policy period.  Specifically, unless the Underlying Lawsuits seek damages for injury occurring to a plaintiff that took place between September 30, 1982 and September 30, 1985, the Policies are not implicated.  The Underlying Lawsuits do not specify when each claimant allegedly suffered injury as a result of their exposure to EtO.  National Union reserves its right to limit or deny coverage on this basis.

The Policies only provide coverage for "bodily injury" caused by an "occurrence."  The Policies define "occurrence" to mean an accident, continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.  The Underlying Lawsuits allege that Sterigenics knew EtO emissions were dangerous, knowingly placed its facilities near residential communities, and knowingly failed to implement emissions reduction technology to prevent harm to nearby residents.  Thus, the emissions and resulting injuries do not appear to be accidental.  To the extent the Underlying Lawsuits allege "bodily injury" that was not caused by an "occurrence," the Policies would not provide coverage. National Union reserves its right to limit or deny coverage on these grounds.

Exclusion (f) (the "Pollution Exclusion") of the Policies provides that the Policies do not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.  The Underlying Lawsuits allege liability arising out of EtO emissions from the Willowbrook facilities into the atmosphere.  The Underlying Lawsuits allege that EtO is toxic and causes cancer.  As a toxic carcinogen, EtO constitutes a pollutant, because it is an irritant, contaminant, toxic chemical and/or gas.  Moreover, the sudden and accidental exception to the Pollution Exclusion does not apply, because Sterigenics' continuous emission of EtO from the Willowbrook facilities were allegedly intentional and an expected part of its business, as evidenced by Sterigenics' permit application.  Therefore, National Union reserves its right to limit or deny coverage pursuant to the Pollution Exclusion.

---

[2] The Policies also potentially apply to damages because of "property damage."  However, the Underlying Lawsuits do not allege damages because of "property damage."  Accordingly, we do not discuss potential "property damage" coverage in this letter.  If Griffith believes "property damage" coverage is potentially implicated by the Underlying Lawsuits, please advise and explain in writing.

K. James Sullivan
Calfee, Halter & Griswold, LLC
September 20, 2024
Page 5

The Policies also potentially apply to "personal injury" sustained by any person and arising out of the "named insured's" business, within the "policy territory." "Personal injury" is defined to include wrongful entry or eviction or other invasion of the right of private occupancy, committed during the policy period. Specifically, unless the Underlying Lawsuits seek damages for "personal injury" occurring to a plaintiff and the "personal injury" occurred between September 30, 1982 and September 30, 1985, the Policies are not implicated. National Union reserves its right to limit or deny coverage on these grounds.

Exclusion (2) of the "personal injury" and "advertising injury" coverage part precludes coverage for "personal injury" arising out of the willful violation of a penal statute or ordinance committed by or with knowledge or consent of the "insured." National Union reserves its right to limit or deny coverage pursuant to this exclusion.

Coverage under the Policies may also be limited by the existence of other insurance. To the extent other insurance is available, National Union's coverage obligations, if any, may be limited.

The Underlying Lawsuits seek punitive damages. To the extent punitive damages do not constitute covered damages or are otherwise uninsurable under applicable law, the Policies do not apply. National Union reserves its rights to deny coverage, in whole or in part, on this basis.

To the extent the Underlying Lawsuits allege "bodily injury" both during the policy period of one or more of the Policies and the policy period of any other insurance policies available to Sterigenics, applicable law may allow National Union to seek contribution on a pro rata basis from the other insurers on the risk. National Union reserves its rights on this basis.

Lastly, as indicated above, National Union and Sterigenics are currently litigating National Union's coverage obligations under the Policies with respect to substantially similar allegations brought against Sterigenics related to the same Willowbrook facility in the Consolidated Lawsuits. If a court finds that National Union is not obligated to provide defense costs and/or coverage to Sterigenics with respect to the Consolidated Lawsuits, National Union reserves its right to withdraw from Sterigenics' defense in the Underlying Lawsuits and to seek reimbursement of its defense costs incurred in defense of Sterigenics in the Underlying Lawsuits.

## REQUESTS FOR INFORMATION

To assist National Union in its ongoing investigation of the Underlying Lawsuits and its evaluation of coverage, please provide the following information and materials at your earliest convenience, and on an ongoing basis:

1.     All pleadings, discovery responses, and expert reports in the Underlying Lawsuits.

K. James Sullivan
Calfee, Halter & Griswold, LLC
September 20, 2024
Page 6

2.     All documents reflecting settlement negotiations related to any of the Underlying Lawsuits.

3.     All defense counsel evaluations of and reports regarding the claims alleged in the Underlying Lawsuits.

4.     Documentation sufficient to identify all primary insurance policies potentially applicable to the Underlying Lawsuits, including copies of such policies.

5.     Documentation sufficient to identify all excess and umbrella insurance policies potentially applicable to the Underlying Lawsuits, including copies of such policies.

6.     Documentation reflecting which, if any, Underlying Insurance has been exhausted.

7.     All communication with other insurers related to insurance coverage for the Underlying Lawsuits.

## <u>CONCLUSION</u>

In summary, National Union agrees to participate in Sterigenics' defense of the Underlying Lawsuits under the Policies, subject to a full and complete reservation of its rights under the Policies and at law, including its right to withdraw from the defense and recoup its defense costs, subject to the outcome of a pending appeal to the Seventh Circuit on relevant rulings related to the Policies.

At your earliest convenience, please contact us to discuss our participation in the defense. Presently, it is our understanding that Sterigenics has retained the law firm Perkins Coie to defend Sterigenics in the Underlying Lawsuits.

Please be advised that National Union's obligation to participate in Sterigenics' defense is limited to reasonable and necessary costs and expenses. Specifically with respect to attorneys' fees, National Union's duty to reimburse defense costs is limited to the rates National Union actually pays to attorneys retained in the ordinary course of business for the defense of similar actions in Cook County, Illinois. Defense counsel will also be asked to comply with National Union's internal billing guidelines and provide timely reports.

Our coverage determination is based on the information presently available to us. This letter is not and should not be construed as a waiver of any terms, conditions, exclusions, or other provisions of the Policies or any other policy issued by any AIG member company. National Union expressly reserves all rights and defenses under its policies, under law, or in equity, including the right to assert defenses to any claims for coverage, for any reason, based on any policy term, condition, exclusion, or other provision, whether or not specifically referenced above.

K. James Sullivan
Calfee, Halter & Griswold, LLC
September 20, 2024
Page 7

After you review this letter, we can schedule a conference call to further discuss National Union's participation in Sterigenics' defense in the Underlying Lawsuits.

Very truly yours,

Beverly A. McCurry

## APPENDIX A

### List of Underlying Lawsuits

| | Caption | Case No. | Venue |
|---|---|---|---|
| 1 | *Jafari v. Sterigenics U.S., LLC, et al.*[3] | 2020L008737 | Circuit Court of Cook County, Illinois |
| 2 | *Kavanagh v. Sterigenics U.S., LLC, et al.* | 2023L005721 | Circuit Court of Cook County, Illinois |
| 3 | *Werich v. Sterigenics U.S., LLC, et al.* | 2023L005767 | Circuit Court of Cook County, Illinois |
| 4 | *D'Angelo v. Sterigenics U.S., LLC, et al.* | 2023L005702 | Circuit Court of Cook County, Illinois |
| 5 | *Cordin v. Sterigenics U.S., LLC, et al.* | 2023L005781 | Circuit Court of Cook County, Illinois |
| 6 | *Tamm v. Sterigenics U.S., LLC, et al.* | 2023L005701 | Circuit Court of Cook County, Illinois |
| 7 | *Herrera v. Sterigenics U.S., LLC, et. al.* | 2023L006563 | Circuit Court of Cook County, Illinois |
| 8 | *Pokorny v. Sterigenics U.S., LLC, et. al.* | 2023L009519 | Circuit Court of Cook County, Illinois |
| 9 | *Poteraske v. Sterigenics U.S., LLC, et. al.* | 2023L009449. | Circuit Court of Cook County, Illinois |
| 10 | *Cibelli v. Sterigenics U.S., LLC, et. al.* | 2023L011216 | Circuit Court of Cook County, Illinois |
| 11 | *Lindsey Johnson v. Sterigenics U.S., LLC, et. al.* | 2023L011218 | Circuit Court of Cook County, Illinois |
| 12 | *Suzanne Johnson v. Sterigenics U.S., LLC, et. al.* | 2023L011210 | Circuit Court of Cook County, Illinois |
| 13 | *Joseph Claffy v. Sterigenics U.S., LLC, et. al.* | 2023L011492 | Circuit Court of Cook County, Illinois |
| 14 | *Nash v. Sterigenics U.S., LLC, et. al.* | 2023L011473 | Circuit Court of Cook County, Illinois |
| 15 | *Rosenwinkel v. Sterigenics U.S., LLC, et. al.* | 2023L011475 | Circuit Court of Cook County, Illinois |
| 16 | *Carvell v. Sterigenics U.S., LLC, et al.* | 2024L000548 | Circuit Court of Cook County, Illinois |
| 17 | *Mark DePaolo  v. Sterigenics U.S., LLC, et al.* | 2024L000550 | Circuit Court of Cook County, Illinois |
| 18 | *Nancy DePaolo v. Sterigenics U.S., LLC, et al.* | 2024L000656 | Circuit Court of Cook County, Illinois |
| 19 | *Jung v. Sterigenics U.S., LLC, et al.* | 2024L000672 | Circuit Court of Cook County, Illinois |
| 20 | *Lee v. Sterigenics U.S., LLC, et al.* | 2024L000678 | Circuit Court of Cook County, Illinois |
| 21 | *Polanic v. Sterigenics U.S., LLC, et al.* | 2024L000662 | Circuit Court of Cook County, Illinois |
| 22 | *Popp v. Sterigenics U.S., LLC, et al.* | 2024L000659 | Circuit Court of Cook County, Illinois |
| 23 | *Trent v. Sterigenics U.S., LLC, et al.* | 2024L000547 | Circuit Court of Cook County, Illinois |
| 24 | *Zurbano v. Sterigenics U.S., LLC, et al.* | 2024L001355 | Circuit Court of Cook County, Illinois |
| 25 | *Sulley v. Sterigenics U.S., LLC, et al.* | 2024L005129 | Circuit Court of Cook County, Illinois |
| 26 | *Musillami v. Sterigenics U.S., LLC, et al.* | 2024L005122 | Circuit Court of Cook County, Illinois |
| 27 | *Koklas v. Sterigenics U.S., LLC, et al.* | 2024L005122 | Circuit Court of Cook County, Illinois |
| 28 | *Schnell v. Sterigenics U.S., LLC, et al.* | 2024L005125 | Circuit Court of Cook County, Illinois |
| 29 | *Schwall v. Sterigenics U.S., LLC, et al.* | 2024L005124 | Circuit Court of Cook County, Illinois |
| 30 | *Wilhelmi v. Sterigenics U.S., LLC, et al.* | 2024L005399 | Circuit Court of Cook County, Illinois |
| 31 | *Singh v. Sterigenics U.S., LLC, et al.* | 2024L006669 | Circuit Court of Cook County, Illinois |

[3] As Griffith has represented to AIG, the *Jafari* lawsuit was originally part of the Consolidated Lawsuits but is an opt-out from the Consolidated Lawsuits global settlement.

|    | Caption | Case No. | Venue |
|----|---------|----------|-------|
| 32 | *Rakocevic v. Sterigenics U.S., LLC, et al.* | 2024L006671 | Circuit Court of Cook County, Illinois |
| 33 | *Ford v. Sterigenics U.S., LLC, et al.* | 2024L006668 | Circuit Court of Cook County, Illinois |
| 34 | *Pett v. Sterigenics U.S., LLC, et al.* | 2024L006708 | Circuit Court of Cook County, Illinois |
| 35 | *Chadha v. Sterigenics U.S., LLC, et al.* | 2024L007008 | Circuit Court of Cook County, Illinois |
| 36 | *Carol Nails v. Sterigenics U.S., LLC, et al.* | 2024L007004 | Circuit Court of Cook County, Illinois |
| 37 | *Rogers v. Sterigenics U.S., LLC, et al.* | 2024L007549 | Circuit Court of Cook County, Illinois |
| 38 | *Diann Nails v. Sterigenics U.S., LLC, et al.* | 2024L007550 | Circuit Court of Cook County, Illinois |
| 39 | *Kunze v. Sterigenics U.S., LLC, et al.* | 2024L007594 | Circuit Court of Cook County, Illinois |
| 40 | *Hickey v. Sterigenics U.S., LLC, et al.* | 2024L007595 | Circuit Court of Cook County, Illinois |
| 41 | *Darnall v. Sterigenics U.S., LLC, et al.* | 2024L007731 | Circuit Court of Cook County, Illinois |
| 42 | *Grossman v. Sterigenics U.S., LLC, et al.* | 2024L008179 | Circuit Court of Cook County, Illinois |
| 43 | *Stout v. Sterigenics U.S., LLC, et al.* | 2024L008772 | Circuit Court of Cook County, Illinois |
| 44 | *Boerwinkle v. Sterigenics U.S., LLC, et al.* | 2024L008770 | Circuit Court of Cook County, Illinois |
| 45 | *Considine v. Sterigenics U.S., LLC, et al.* | 2024L008774 | Circuit Court of Cook County, Illinois |
| 46 | *Nieto v. Sterigenics U.S., LLC, et al.* | 2024L008778 | Circuit Court of Cook County, Illinois |
| 47 | *Griffin v. Sterigenics U.S., LLC, et al.* | 2024L008764 | Circuit Court of Cook County, Illinois |
| 48 | *Kizys v. Sterigenics U.S., LLC, et al.* | 2024L008768 | Circuit Court of Cook County, Illinois |
| 49 | *Kukuc v. Sterigenics U.S., LLC, et al.* | 2024L008782 | Circuit Court of Cook County, Illinois |
| 50 | *Leuck v. Sterigenics U.S., LLC, et al.* | 2024L009137 | Circuit Court of Cook County, Illinois |
| 51 | *Ouardi v. Sterigenics U.S., LLC, et al.* | 2024L009185 | Circuit Court of Cook County, Illinois |
| 52 | *Reynoso v. Sterigenics U.S., LLC, et al.* | 2024L009254 | Circuit Court of Cook County, Illinois |
| 53 | *Gelvich v. Sterigenics U.S., LLC, et al.* | 2024L009262 | Circuit Court of Cook County, Illinois |
| 54 | *Wagner v. Sterigenics U.S., LLC, et al.* | 2024L009290 | Circuit Court of Cook County, Illinois |
| 55 | *Mayor v. Sterigenics U.S., LLC, et al.* | 2024L009532 | Circuit Court of Cook County, Illinois |

**APPENDIX B**

<u>**RELEVANT EXCERPTS OF THE NATIONAL UNION POLICIES**</u>

I.    **COVERAGE A—BODILY INJURY LIABILITY**
**COVERAGE B—PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the insured all sums which the **insured** shall become legally obligated to pay as damages because of

A.    **bodily injury** or
B.    **property damage**

to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

\*       \*       \*

(f)    to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

\*       \*       \*

**DEFINITIONS**

\*       \*       \*

**"bodily injury"** means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

\*       \*       \*

**"insured"** means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each **insured** against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

\*       \*       \*

**"named insured"** means the person or organization named in Item 1. of the declarations of this policy;

\*       \*       \*

**"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**;

\*       \*       \*

**"property damage"** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period;

\*       \*       \*

### BROAD FORM COMPREHENSIVE GENERAL LIABILITY ENDORSEMENT

\*       \*       \*

**II.    PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE**

**(A)**    The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**(B)**    This insurance does not apply:

\*       \*       \*

**(2)**     to **personal injury** or **advertising injury** arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured;

\*          \*          \*

**(D)     Additional Definitions**

\*          \*          \*

"**Personal injury**" means injury arising out of one or more of the following offenses committed during the policy period:

**1.**     False arrest, detention, imprisonment, or malicious prosecution;

**2.**     Wrongful entry or conviction or other invasion of the right of private occupancy;

**3.**     A publication or utterance

> **(a)**     Of a libel or slander or other defamatory or disparaging material, or

> **(b)**     In violation of an individual's right of privacy;

Except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the **name insured** shall not be deemed **personal injury**.

EXHIBIT D



AIG Property Casualty
PO Box 10006
Shawnee Mission, KS 66225
www.aig.com

Beverly McCurry
Assistant Vice President
Complex Casualty Claims
T 856-912-9273
Beverly.McCurry@aig.com

July 11, 2025

**VIA EMAIL (**kjsullivan@calfee.com**)**
K. James Sullivan
Calfee, Halter & Griswold, LLC
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607

|  |  |  |
|---|---|---|
| RE: | Named Insureds: | **Griffith Laboratories, Inc.** |
|  |  | **Griffith Laboratories U.S.A., Inc.** |
|  | Lawsuits: | **See Appendix A** |
|  | Policy Nos.: | **GLA 9456632 RA (9/30/82 – 9/30/83)** |
|  |  | **GLA 9457058 RA (9/30/83 – 9/30/84)** |
|  |  | **GLA 1940011 RA (9/30/84 – 9/30/85)** |
|  | Claim No.: | **2612693967US** |

Dear Mr. Sullivan:

AIG Claims, Inc. is the authorized claims handling representative of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), which issued the above-referenced policies to, among others, Griffith Laboratories, Inc. and Griffith Laboratories U.S.A., Inc. (collectively, "Griffith"). I am the adjuster handling this claim and all future correspondence should be directed to me.

We understand that you are coverage counsel for Sterigenics U.S., LLC and Sotera Health LLC (together in this letter, "Sterigenics"). Accordingly, we direct this communication to your attention. If, however, this letter should be directed to another party, please advise us immediately.

Griffith previously advised AIG Claims, Inc. of 54 pending underlying lawsuits that seek damages from Griffith and Sterigenics (among other named defendants) arising out of releases of ethylene oxide ("EtO") from facilities operated by Griffith and Sterigenics in and near Willowbrook, Illinois ("Willowbrook facility"). Specifically, attached hereto as **Appendix A** is a list of 54 underlying lawsuits. The 54 underlying lawsuits are collectively referred to herein as the "Underlying Lawsuits."

Griffith requests insurance coverage from National Union for the Underlying Lawsuits. It is unclear if Sterigenics also requests coverage for these lawsuits. However, since each of the 54 Underlying Lawsuits names Sterigenics as a defendant and the insurers are aware of the lawsuits, I write to advise Sterigenics of National Union's position regarding coverage for the Underlying Lawsuits. As explained more fully below, National Union agrees to participate in Sterigenics'

defense in the Underlying Lawsuits, subject to a full and complete reservation of its rights under the policies and at law.

As you are aware, National Union and Sterigenics are involved in coverage litigation regarding National Union's obligations under the above-referenced Policies with respect to substantially similar allegations as to Eto emissions from the same Willowbrook facility raised in more than 500 consolidated lawsuits filed in the Circuit Court of Cook County, Illinois under Case No. 18-L-010475 (the "Consolidated Lawsuits").[1]  National Union continues to contest its obligations, including a duty to defend Sterigenics, and has appealed the judgment of the United States District Court for the Northern District of Illinois.  During the pendency of National Union's appeal to the Seventh Circuit Court of Appeals, National Union agrees to participate in the defense of the Underlying Lawsuits.  But in the event the District Court's rulings—including its duty to defend ruling—are overturned on appeal or any court determines that National Union does not owe any or certain defense or coverage obligations under the National Union Policies with respect to the allegations in the Consolidated Lawsuits, National Union reserves the right to withdraw from the defense of the Underlying Lawsuits and to recoup all sums incurred in the defense of Sterigenics. National Union also reserves its rights in the event that the court in the Cook County case issues a no-coverage ruling, where Griffith and Sterigenics seek to amend the complaint to add these policies.

In considering coverage for the Underlying Lawsuits, we have carefully reviewed the insurance policies referenced above, as well as the allegations contained in the Underlying Lawsuits.  No other policies were considered for purposes of this letter.  Contemporaneous with this letter, we will separately issue a letter regarding AIG's position regarding coverage for Sterigenics for the Underlying Lawsuits under certain other umbrella and excess policies issued by other AIG member companies.  If you assert a right to coverage under any another policy issued by any other member company of AIG Property Casualty, Inc., please provide notice pursuant to the notice provisions contained in that policy.

## FACTUAL CIRCUMSTANCES

The Underlying Lawsuits allege that Sterigenics and its predecessors operated two ethylene oxide medical device sterilization facilities in Willowbrook, Illinois.  The Underlying Lawsuits maintain that plaintiffs lived, worked, and recreated near the Willowbrook facilities and unknowingly breathed excessive amounts of EtO emitted from the facilities routinely and continuously for years. This allegedly resulted in injuries.

While the complaints in the Underlying lawsuits amount to many pages, they generally allege that (i) Sterigenics knew that EtO is dangerous to human health and knowingly chose not to warn the Willowbrook residents of EtO's dangers; (ii) Sterigenics knowingly failed to implement emission

---

[1] *Sterigenics et al. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, N.D. Ill. No. 1:21-cv-4581; *Griffith Foods Int'l, Inc., et al. v. Zurich Am. Ins. Co., et al.,* Cook Cnty. Cir. Ct. No. 2023-CH-00782; and *Zurich Am. Ins. Co., et al. v. Sterigenics U.S., LLC, et al.,* Del. Super. Ct. C.A. No. N23C-02-232 MAA (currently stayed).

**AIG**

K. James Sullivan
Calfee, Halter & Griswold, LLC
July 11, 2025
Page 3

control equipment to regulate the emissions of EtO from the Willowbrook facility; and (iii) as a result of the alleged conduct, plaintiffs inhaled dangerous amounts of EtO and developed diseases and conditions, incurring medical bills, lost wages, pain and suffering, emotional distress, disability, disfigurement, a reduced life expectancy, and loss of normal life. The lawsuits assert various causes of action against Sterigenics, including: negligence; willful and wanton conduct; civil battery; public nuisance; and in concert liability.

## THE POLICIES

National Union issued to Griffith Laboratories, Inc. Commercial General Liability Policy No. GLA 9456632 RA, effective September 30, 1982 to September 30, 1983; No. GLA 9456632 RA, effective September 30, 1983 to September 30, 1984; and No. GLA 1940011 RA, effective September 30, 1984 to September 30, 1985 (collectively, the "Policies").

Attached to this letter for your reference is **Appendix B**, which quotes relevant provisions of the Policies. By referencing specific policy provisions, we do not intend to suggest any other policy provision is unimportant or irrelevant, and National Union expressly reserves its rights to rely on any other provisions in the Policies. Please refer to your copies of the Policies for their complete terms and conditions.

We have been unable to locate a copy of a National Union Policy No. GLA 9456632 RA issued to Griffith and effective September 30, 1982 to September 30, 1983. Please provide us with your copy of this policy, if you have located one. National Union continues to search for this policy and will advise you if it is able to locate it. In the event that Griffith likewise does not possess a copy of this policy, we request that Griffith continue to search and provide us with any documents referencing the policy that it discovers.

## RESERVATION OF RIGHTS

As an initial matter, the Policies provide coverage to an insured. In relevant part, the Policies provide that "Named Insured" means the organization, including any subsidiary thereof, named in item 1 of the declarations and also includes any other company which is acquired or formed by the named insured during the policy period and over which the named insured maintains ownership or financial control, provided this insurance does not apply to any such newly acquired or formed company which is an insured under any other liability or indemnity policy or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability. Such insurance as may be afforded a newly acquired or formed company shall terminate within sixty days of its acquisition of formation unless reported to the company within said sixty days. The Policies also provide automatic coverage for newly formed or acquired companies by the named insured during the policy periods, but that coverage expires 90 days from acquisition or formation. Item 1 of the Policies, as amended by endorsement, identifies Griffith Laboratories U.S.A., Inc. and Griffith Laboratories, Inc. as Named Insureds. National Union reserves its rights to deny coverage to the extent Sterigenics is not an insured under the Policies.

AIG

K. James Sullivan
Calfee, Halter & Griswold, LLC
July 11, 2025
Page 4

The Policies potentially apply to pay all sums an insured is legally obligated to pay as damages because of "bodily injury" caused by an "occurrence."[2]   The Policies define "bodily injury" to mean bodily injury, sickness or disease sustained by any person that occurs during the policy period, including death at any time resulting therefrom.  To the extent that the Underlying Lawsuits do not seek damages for "bodily injury" as defined, the Policies would not provide coverage. National Union reserves its right to limit or deny coverage on this basis.

The Policies potentially apply to pay all sums an insured is legally obligated to pay as damages because of "bodily injury" taking place during the policy period.  To qualify as covered "bodily injury" under the Policies, the alleged bodily injury, sickness or disease must occur during the applicable policy period.  Specifically, unless the Underlying Lawsuits seek damages for bodily injury occurring to a plaintiff between September 30, 1982 and September 30, 1985, the Policies are not implicated.  The Underlying Lawsuits do not specify when each claimant allegedly suffered injury as a result of their exposure to EtO.  Thus, National Union reserves its right to limit or deny coverage on this basis.

The Policies provide coverage only for "bodily injury" caused by an "occurrence."  The Policies define "occurrence" to mean an accident, continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.  The Underlying Lawsuits allege that Sterigenics knew EtO emissions were dangerous, knowingly placed its facilities near residential communities, and knowingly failed to implement emissions reduction technology to prevent harm to nearby residents.  Thus, the EtO emissions and resulting injuries do not appear to be accidental.  To the extent the Underlying Lawsuits allege "bodily injury" that was not caused by an "occurrence," the Policies would not provide coverage. National Union reserves its right to limit or deny coverage on these grounds.

Exclusion (f) (the "Pollution Exclusion") of the Policies provides that the Policies do not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.  The Underlying Lawsuits allege liability arising out of EtO emissions from the Willowbrook facilities into the atmosphere.  The Underlying Lawsuits allege that EtO is toxic and causes cancer.  As a toxic carcinogen, EtO constitutes a pollutant, because it is an irritant, contaminant, toxic chemical and/or gas.  Moreover, the sudden and accidental exception to the Pollution Exclusion does not apply, because Sterigenics' continuous emission of EtO from the Willowbrook facilities were allegedly intentional and an expected part of its business, as evidenced by Sterigenics' permit application.  Therefore, National Union reserves its right to limit or deny coverage pursuant to the Pollution Exclusion.

---

[2] The Policies also potentially apply to damages because of "property damage."  However, the Underlying Lawsuits do not allege damages because of "property damage."  Accordingly, we do not discuss potential "property damage" coverage in this letter.  If Griffith believes "property damage" coverage is potentially implicated by the Underlying Lawsuits, please advise and explain in writing.

The Policies also potentially apply to "personal injury" sustained by any person and arising out of the "named insured's" business, within the "policy territory." "Personal injury" is defined to include wrongful entry or eviction or other invasion of the right of private occupancy, committed during the policy period. Specifically, unless the Underlying Lawsuits seek damages for "personal injury" occurring to a plaintiff between September 30, 1982 and September 30, 1985, the Policies are not implicated. National Union reserves its right to limit or deny coverage on these grounds.

Exclusion (2) of the "personal injury" and "advertising injury" coverage part precludes coverage for "personal injury" arising out of the willful violation of a penal statute or ordinance committed by or with knowledge or consent of the "insured." National Union reserves its right to limit or deny coverage pursuant to this exclusion.

Coverage under the Policies may also be limited by the existence of other insurance. To the extent other insurance is available, National Union's coverage obligations, if any, may be limited.

The Underlying Lawsuits seek punitive damages. To the extent punitive damages do not constitute covered damages or are otherwise uninsurable under applicable law, the Policies do not apply. National Union reserves its rights to deny coverage, in whole or in part, on this basis.

To the extent the Underlying Lawsuits allege "bodily injury" both during the policy period of one or more of the Policies and the policy period of any other insurance policies available to Sterigenics, applicable law may allow National Union to seek contribution or indemnification on a pro rata basis from the other insurers on the risk. National Union reserves its rights on this basis.

Lastly, as indicated above, National Union and Sterigenics are currently litigating National Union's coverage obligations under the Policies with respect to substantially similar allegations brought against Sterigenics related to EtO emissions from the same Willowbrook facility in the Consolidated Lawsuits. If a court finds that National Union is not obligated to provide defense costs and/or coverage to Sterigenics with respect to the Consolidated Lawsuits, National Union reserves its right to withdraw from Sterigenics' defense in the Underlying Lawsuits and to seek reimbursement of its defense costs incurred in defense of Sterigenics in the Underlying Lawsuits.

## REQUESTS FOR INFORMATION

To assist National Union in its ongoing investigation of the Underlying Lawsuits and its evaluation of coverage, please provide the following information and materials at your earliest convenience, and on an ongoing basis:

1. All pleadings, discovery responses (including by third parties), and expert reports in the Underlying Lawsuits.



K. James Sullivan
Calfee, Halter & Griswold, LLC
July 11, 2025
Page 6

2.      All documents, including board minutes and board materials, reflecting settlement negotiations and any settlement agreements related to any of the Underlying Lawsuits.

3.      All evaluations, including by defense counsel, of and reports regarding the claims alleged in the Underlying Lawsuits.

4.      All communications with defense counsel regarding the claims and defenses in the Underlying Lawsuits.

5.      Documentation sufficient to identify all primary insurance policies potentially applicable to the Underlying Lawsuits, including copies of such policies.

6.      Documentation sufficient to identify all excess and umbrella insurance policies potentially applicable to the Underlying Lawsuits, including copies of such policies.

7.      Documentation reflecting which, if any, Underlying Insurance has been exhausted.

8.      All communications with other insurers related to insurance coverage for the Underlying Lawsuits.

9.      All documents and communications reflecting or discussing the operational dates of the Willowbrook facility at issue in the Underlying Lawsuits.

10.     All permits, such as but not limited to, operating permits, construction permits, and emissions-related permits, for the Willowbrook facility at issue in the Underlying Lawsuits, and documents and communications related to those permits.

11.     All documents concerning the EtO sterilization processes at the Willowbrook facility at issue in the Underlying Lawsuits.

## **CONCLUSION**

In summary, National Union agrees to participate in Sterigenics' defense of the Underlying Lawsuits under the Policies, subject to a full and complete reservation of its rights under the Policies and at law, including its right to withdraw from the defense and recoup its defense costs, subject to the outcome of a pending appeal to the Seventh Circuit on relevant rulings related to the Policies or if any other court determines that National Union does not owe any or certain defense or coverage obligations under the National Union Policies with respect to the allegations in the Consolidated Lawsuits.

At your earliest convenience, please contact us to discuss our participation in the defense. Presently, it is our understanding that Sterigenics has retained the law firm Perkins Coie to defend Sterigenics in the Underlying Lawsuits.

**AIG**

K. James Sullivan
Calfee, Halter & Griswold, LLC
July 11, 2025
Page 7

Please be advised that National Union's obligation to participate in Sterigenics' defense is limited to reasonable and necessary costs and expenses. Specifically with respect to attorneys' fees, National Union's duty to reimburse defense costs is limited to the rates National Union actually pays to attorneys retained in the ordinary course of business for the defense of similar actions in Cook County, Illinois. Defense counsel will also be asked to comply with National Union's internal billing guidelines and provide timely reports.

Our coverage determination is based on the information available to us now. This letter is not and should not be construed as a waiver of any terms, conditions, exclusions, or other provisions of the Policies or any other policy issued by any AIG member company. National Union expressly reserves all rights and defenses under its policies, under law, or in equity, including the right to assert defenses to any claims for coverage, for any reason, based on any policy term, condition, exclusion, or other provision, whether or not specifically referenced above.

After you review this letter, we can schedule a call to further discuss National Union's participation in Sterigenics' defense in the Underlying Lawsuits.

Very truly yours,

*Beverly D. McCurry*

Beverly McCurry

## APPENDIX A

### List of Underlying Lawsuits

|   | Caption | Case No. | Venue |
|---|---------|----------|-------|
| 1 | *Federico v. Sterigenics U.S., et al.* | 2024L009824 | Circuit Court of Cook County, IL |
| 2 | *Ellis v. Sterigenics U.S., et al.* | 2024L010102 | Circuit Court of Cook County, IL |
| 3 | *Griffin, Jr. v. Sterigenics U.S., et al.* | 2024L010081 | Circuit Court of Cook County, IL |
| 4 | *Pister v. Sterigenics U.S., et al.* | 2024L010133 | Circuit Court of Cook County, IL |
| 5 | *Dahlstrand v. Sterigenics U.S., et al.* | 2024L010268 | Circuit Court of Cook County, IL |
| 6 | *Podlesiecka v. Sterigenics U.S., et al.* | 2024L010273 | Circuit Court of Cook County, IL |
| 7 | *Podio v. Sterigenics U.S., et al.* | 2024L010607 | Circuit Court of Cook County, IL |
| 8 | *Lambke v. Sterigenics U.S., et al.* | 2024L010620 | Circuit Court of Cook County, IL |
| 9 | *Burgonio v. Sterigenics U.S., LLC, et al.* | 2024L013806 | Circuit Court of Cook County, IL |
| 10 | *Yaqoub v. Sterigenics U.S., LLC, et al.* | 2024L013408 | Circuit Court of Cook County, IL |
| 11 | *Powers v. Sterigenics U.S., LLC, et al.* | 2024L010954 | Circuit Court of Cook County, IL |
| 12 | *Peloso v. Sterigenics U.S., LLC, et al.* | 2024L010957 | Circuit Court of Cook County, IL |
| 13 | *Galinskiene v. Sterigenics U.S., LLC, et al.* | 2024L011289 | Circuit Court of Cook County, IL |
| 14 | *Carpenter v. Sterigenics U.S., LLC, et al.* | 2024L011423 | Circuit Court of Cook County, IL |
| 15 | *Sticken v. Sterigenics U.S., LLC, et al.* | 2024L011425 | Circuit Court of Cook County, IL |
| 16 | *Feller v. Sterigenics U.S., LLC, et al.* | 2024L011422 | Circuit Court of Cook County, IL |
| 17 | *Spear v. Sterigenics U.S., LLC, et al.* | 2024L012253 | Circuit Court of Cook County, IL |
| 18 | *Randall v. Sterigenics U.S., LLC, et al.* | 2024L012254 | Circuit Court of Cook County, IL |
| 19 | *Feller v. Sterigenics U.S., LLC, et al.* | 2024L012251 | Circuit Court of Cook County, IL |
| 20 | *Simonetti v. Sterigenics U.S., LLC, et al.* | 2024L012328 | Circuit Court of Cook County, IL |
| 21 | *McGinley v. Sterigenics U.S., LLC, et al.* | 2024L012387 | Circuit Court of Cook County, IL |
| 22 | *Bleka v. Griffith Foods Int'l Inc., et al.* | 2024L012454 | Circuit Court of Cook County, IL |
| 23 | *Fink v. Griffith Foods Int'l Inc., et al.* | 2024L012569 | Circuit Court of Cook County, IL |
| 24 | *Angotti v. Griffith Foods Int'l Inc., et al.* | 2024L012649 | Circuit Court of Cook County, IL |
| 25 | *Dorich v. Griffith Foods Int'l Inc., et al.* | 2024L012648 | Circuit Court of Cook County, IL |
| 26 | *Pilipowski v. Griffith Foods Int'l Inc., et al.* | 2024L012647 | Circuit Court of Cook County, IL |
| 27 | *Boots v. Griffith Foods Int'l Inc., et al.* | 2024L013114 | Circuit Court of Cook County, IL |
| 28 | *Burgess v. Griffith Foods Int'l Inc., et al.* | 2024L013113 | Circuit Court of Cook County, IL |
| 29 | *Heinzel v. Griffith Foods Int'l Inc., et al.* | 2024L013204 | Circuit Court of Cook County, IL |
| 30 | *Martino v. Griffith Foods Int'l Inc., et al.* | 2024L013254 | Circuit Court of Cook County, IL |
| 31 | *Mara v. Griffith Foods Int'l Inc., et al.* | 2024L013339 | Circuit Court of Cook County, IL |
| 32 | *Jansa v. Griffith Foods Int'l Inc., et al.* | 2024L013482 | Circuit Court of Cook County, IL |
| 33 | *Panages v. Griffith Foods Int'l Inc., et al.* | 2024L013521 | Circuit Court of Cook County, IL |
| 34 | *Painter v. Griffith Foods Int'l Inc., et al.* | 2024L013544 | Circuit Court of Cook County, IL |
| 35 | *Ryan v. Griffith Foods Int'l Inc., et al.* | 2024L013616 | Circuit Court of Cook County, IL |

| | Caption | Case No. | Venue |
|---|---|---|---|
| 36 | *Bates v. Griffith Foods Int'l Inc., et al.* | 2024L013647 | Circuit Court of Cook County, IL |
| 37 | *Callen v. Griffith Foods Int'l Inc., et al.* | 2024L013665 | Circuit Court of Cook County, IL |
| 38 | *Cristallo v. Griffith Foods Int'l Inc., et al.* | 2024L013759 | Circuit Court of Cook County, IL |
| 39 | *Giannini v. Griffith Foods Int'l Inc., et al.* | 2024L013721 | Circuit Court of Cook County, IL |
| 40 | *Peterson v. Griffith Foods Int'l Inc., et al.* | 2024L013762 | Circuit Court of Cook County, IL |
| 41 | *Kowalski v. Griffith Foods Int'l Inc., et al.* | 2024L013839 | Circuit Court of Cook County, IL |
| 42 | *Green v. Griffith Foods Int'l Inc., et al.* | 2024L013829 | Circuit Court of Cook County, IL |
| 43 | *Polz v. Griffith Foods Int'l Inc., et al.* | 2024L013856 | Circuit Court of Cook County, IL |
| 44 | *Ritchie v. Griffith Foods Int'l Inc., et al.* | 2024L013884 | Circuit Court of Cook County, IL |
| 45 | *Arenberg v. Griffith Foods Int'l Inc., et al.* | 2024L013951 | Circuit Court of Cook County, IL |
| 46 | *Williams v. Griffith Foods Int'l Inc., et al.* | 2024L013949 | Circuit Court of Cook County, IL |
| 47 | *Leuck v. Griffith Foods Int'l Inc., et al.*[3] | 2024L012500 | Circuit Court of Cook County, IL |
| 48 | *Suarino v. Griffith Foods Int'l Inc., et al.* | 2024L014032 | Circuit Court of Cook County, IL |
| 49 | *Schuenemann v. Griffith Foods Int'l Inc.* | 2024L014067 | Circuit Court of Cook County, IL |
| 50 | *Hazucka v. Griffith Foods Int'l Inc.* | 2024L013835 | Circuit Court of Cook County, IL |
| 51 | *Pollmann v. Griffith Foods Int'l Inc.* | 2024L014124 | Circuit Court of Cook County, IL |
| 52 | *Rush v. Sterigenics U.S., LLC, et al.* | 2025L001065 | Circuit Court of Cook County, IL |
| 53 | *Rosenwinkel v. Sterigenics U.S., LLC, et al.*[4] | 2025L003611 | Circuit Court of Cook County, IL |
| 54 | *Tyk v. Sterigenics U.S., LLC, et al.* | 2025L004144 | Circuit Court of Cook County, IL |

[3] This case was previously included in National Union's September 24, 2024 coverage position letter to Sterigenics under a different case number (Cook Cnty. Cir. Ct. No. 2024L009137). We understand that case was voluntarily dismissed and re-filed, with the case number identified herein.

[4] This was also previously included in National Union's September 24, 2024 coverage position letter to Sterigenics under a different case number (Cook Cnty. Cir. Ct. No. 2023L011475). We understand that case was voluntarily dismissed and re-filed, with the case number identified herein.

## APPENDIX B

## <u>RELEVANT EXCERPTS OF THE NATIONAL UNION POLICIES</u>

**I.      COVERAGE A—BODILY INJURY LIABILITY
COVERAGE B—PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the insured all sums which the **insured** shall become legally obligated to pay as damages because of

A.      **bodily injury** or
B.      **property damage**

to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

\*      \*      \*

(f)      to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

\*      \*      \*

## **DEFINITIONS**

\*      \*      \*

**"bodily injury"** means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

\*      \*      \*

**"insured"** means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each **insured** against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

\* \* \*

**"named insured"** means the person or organization named in Item 1. of the declarations of this policy;

\* \* \*

**"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**;

\* \* \*

**"property damage"** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period;

\* \* \*

## BROAD FORM COMPREHENSIVE GENERAL LIABILITY ENDORSEMENT

\* \* \*

**II.    PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE**

**(A)**    The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**(B)**    This insurance does not apply:

\* \* \*

**(2)**     to **personal injury** or **advertising injury** arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured;

*          *          *

**(D)     Additional Definitions**

*          *          *

"**Personal injury**" means injury arising out of one or more of the following offenses committed during the policy period:

**1.**     False arrest, detention, imprisonment, or malicious prosecution;

**2.**     Wrongful entry or conviction or other invasion of the right of private occupancy;

**3.**     A publication or utterance

    **(a)**     Of a libel or slander or other defamatory or disparaging material, or

    **(b)**     In violation of an individual's right of privacy;

Except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the **name insured** shall not be deemed **personal injury**.