Nos. 24-1217 & 24-1223

# In the United States Court of Appeals for the Seventh Circuit

GRIFFITH FOODS INTERNATIONAL INC. f/k/a GRIFFITH LABORATORIES U.S.A., INC., AND GRIFFITH FOODS GROUP INC. f/k/a GRIFFITH LABORATORIES, INC.,

*Plaintiffs-Appellees*,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,

*Defendant-Appellant*.

STERIGENICS, U.S., LLC,

*Plaintiff-Appellee*,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Northern District of Illinois
Case Nos. 1:21-cv-4581, 1:21-cv-6403

## CIRCUIT RULE 52(b) STATEMENT OF POSITION OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Thomas H. Dupree Jr.
Nick Harper
Aaron Hauptman
Aly Cox
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 955-8500
tdupree@gibsondunn.com

## INTRODUCTION

Pursuant to Circuit Rule 52(b) and this Court's January 23, 2026 order, Defendant-Appellant National Union respectfully submits this statement regarding what action the Court should take to complete resolution of the appeal following the Illinois Supreme Court's answer to the certified question.  For the reasons explained below, National respectfully submits that the Illinois Supreme Court's ruling that "a permit or regulation authorizing emissions (generally or at any particular levels) has no relevance in assessing the application of a pollution exclusion" fully resolves this appeal and requires reversing the district court's judgments and remanding with instructions to enter judgment in favor of National Union.

## BACKGROUND

This is an insurance dispute between National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), the insurer, defendant, and appellant, and Griffith Foods International Inc., Griffith Foods Group Inc., and Sterigenics, U.S., LLC ("Griffith" and "Sterigenics"), the putative insureds, plaintiffs, and appellees.

Griffith and Sterigenics brought separate but related suits against National Union in the U.S. District Court for the Northern District of Illinois seeking a declaration that National Union had a duty to defend them in hundreds of tort suits related to their emission of ethylene oxide from a medical-device-sterilization facility in Willowbrook, Illinois (the "Underlying Lawsuits"). *See* JA16-36, 628-41. The parties cross-moved for judgment on the pleadings. *See* RSA2.

The district court granted judgment on the pleadings to Griffith and Sterigenics. The court held that National Union had a duty to defend Griffith and Sterigenics in the Underlying Lawsuits because it concluded: (1) the policies' pollution exclusion was ambiguous about whether it applied to emissions made pursuant to a permit, (2) the alleged emissions triggered the pollution exclusion's sudden-and-accidental exception in any event; and (3) the policies' personal-injury coverage, which is not subject to the pollution exclusion, independently required a defense. *See* RSA13-24. The district court ordered National Union to pay Griffith and Sterigenics approximately $124 million in defense costs, plus interest. RSA 53-56. National Union appealed in both cases. *See* JA612, 880.

On appeal, National Union raised several grounds for reversal, including that the district court's duty-to-defend holdings were erroneous, that Rule 19 requires dismissal, and that Sterigenics did not establish that it was an insured party and obtained an unreasonable damages award. *See* Doc. No. 42.[1]  In April 2025, this Court issued a decision addressing only the duty-to-defend issues.  *See* Doc. No. 68 ("7th Cir. Op."). Resolving those issues, the Court reasoned, would "eliminate all other issues pressed by National Union on appeal," because "[i]f the pollution exclusion applies, Griffith and Sterigenics have no claim to coverage and no basis for requiring National Union to defend them."  *Id.* at 6.

In addressing the duty-to-defend issues, the Court rejected the district court's sudden-and-accidental and personal-injury holdings, leaving open only the question of whether the pollution exclusion unambiguously applies to emissions authorized by a permit.  *See* 7th Cir. Op. at 10-13. On that issue, the Court explained that its "own reading of" the Illinois Supreme Court's decision in *American States Insurance Co. v. Koloms,* 687 N.E.2d 72 (Ill. 1997), "suggests that the pollution exclusion applies" to permitted emissions.  7th Cir. Op. at 2; *see also id.* at 15-16.  And the

---

[1] Document Numbers in this statement refer to the docket in Case No. 24-1217.

Court explained that its holding in *Scottsdale Indemnity Co. v. Village of Crestwood*, 673 F.3d 715 (7th Cir. 2012)—that regulations authorizing emissions did not affect the application of the pollution exclusion—was "in line with [its] own natural reading of *Koloms*." 7th Cir. Op. at 17.

The Court thus stated that "if *Koloms* stood in the Illinois Reports as the only pertinent authority on the question presented, we would hold that the pollution exclusion in the CGL policies at issue here applies to exclude the possibility of coverage for the bodily injuries alleged in the Master Complaint—thereby relieving National Union of any duty to defend Griffith and Sterigenics." 7th Cir. Op. at 15.

Despite the Court's reading of *Koloms*, the Court certified to the Illinois Supreme Court the remaining question in the case: "what relevance, if any, does a permit or regulation authorizing emissions (generally or at particular levels) play in assessing the application of a pollution exclusion within a standard-form commercial general liability policy?" 7th Cir. Op. at 19. The Court determined that certification was warranted because resolution of that state-law issue "'may be determinative' of the case," and a decision by an intermediate Illinois appellate court

4

(*Imperial Marble*) "could be read" to reach the opposite reading of *Koloms*. *Id.* at 16, 18 (quoting Ill. Sup. Ct. R. 20(a)).

On January 23, 2026, the Illinois Supreme Court issued a unanimous opinion "answer[ing] the certified question as follows: a permit or regulation authorizing emissions (generally or at any particular levels) has *no relevance* in assessing the application of a pollution exclusion within a standard-form commercial general liability policy." Doc. No. 71-1 ¶ 31 ("Ill. S. Ct. Op.") (emphasis added). The Illinois Supreme Court reasoned that the "plain language" of the pollution exclusion "says *nothing* about permitted or authorized pollution," that permitted emissions "fit squarely within the plain and ordinary meaning of 'traditional environmental pollution'" under *Koloms*, and that "[d]eclining to apply the pollution exclusion simply because the pollution was *permitted* by the State would undermine the pollution exclusion's very purpose." *Id.* ¶¶ 25-27. The court determined it would "not strain to find an ambiguity where none exists." *Id.* ¶ 24.

## ARGUMENT

### I.   This Court Should Reverse And Remand With Instructions To Enter Judgment For National Union.

The Illinois Supreme Court's decision fully resolves this appeal in National Union's favor.  This Court should reverse and remand with instructions to enter judgment for National Union.

In its April 2025 opinion, this Court went a long way towards reversing in full the district court's duty-to-defend ruling.  The Court definitively resolved two of the three coverage issues in National Union's favor.  On the third—whether the pollution exclusion applies to emissions pursuant to a government permit—the Court explained that its "own reading of *Koloms* suggests that the pollution exclusion applies" to permitted emissions, before certifying that question to the Illinois Supreme Court.  *See* 7th Cir. Op. at 2, 10-13.

The Illinois Supreme Court's answer to the certified question confirms that this Court's reading of *Koloms* was correct, and it resolves this case.  In a unanimous opinion, joined by the author of *Imperial Marble* (who had since been elevated to the Illinois Supreme Court), the Illinois Supreme Court held that permits have "no relevance" to the application of the pollution exclusion based on the exclusion's plain language,

6

*Koloms*, and the purpose of the exclusion.  Ill. S. Ct. Op. ¶¶ 25-27, 31.  In doing so, the Illinois Supreme Court sided firmly with this Court's reading of *Koloms* and "overruled" *Imperial Marble* to the extent it was inconsistent with its holding.  *Id.* ¶¶ 29, 31.

This Court already explained what would follow from an Illinois Supreme Court decision confirming this Court's reading of *Koloms*:  "[W]e would hold that the pollution exclusion in the CGL policies at issue here applies to exclude the possibility of coverage for the bodily injuries alleged in the Master Complaint—thereby relieving National Union of any duty to defend Griffith and Sterigenics."  7th Cir. Op. at 15.  Now that the Illinois Supreme Court has issued that decision, the Court should so hold.  The Court should reverse the district court's judgments in favor of Griffith and Sterigenics and remand with instructions to enter judgment declaring National Union has no duty to defend Griffith and Sterigenics with respect to the Underlying Lawsuits.

## II.  This Court Should Reject Any Effort By Griffith And Sterigenics To Inject New Issues At This Late Stage

Before the Illinois Supreme Court, Griffith and Sterigenics raised a new argument for affirmance.  They asserted that even if the Illinois Supreme Court determined that permitted emissions fall within the

7

pollution exclusion, National Union still had a duty to defend because *Imperial Marble* purportedly rendered it unclear whether the pollution exclusion applied when Griffith and Sterigenics requested defense from National Union in 2021. The Illinois Supreme Court didn't bite, and if Griffith and Sterigenics renew that argument here, this Court shouldn't either.

To start, Griffith and Sterigenics waived this argument. They nowhere argued in their district court briefing or before this Court that National Union has a duty to defend—even if the Illinois Supreme Court rejected *Imperial Marble*—merely because that intermediate appellate decision was on the books when National Union denied a defense in 2021. *See* Dkts. 25, 35, No. 21-cv-4581 (Sterigenics); Dkts. 19, 25, No. 21-cv-6403 (Griffith); Doc. No. 51 at 32-36, 48-49. They raised this argument for the first time in the Illinois Supreme Court—which also declined to address it. This Court should not consider the argument at this late stage. *See Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 717 (D.C. Cir. 1986) (party "waived" arguments raised after Indiana Supreme Court answered certified question "by failing to raise them on their initial appeal to this court"). Indeed, allowing Griffith and Sterigenics to air a new

argument would be particularly inequitable after the Court held that "National Union failed to preserve its contention" that its duty to defend had to be analyzed by reference to the "800 complaints used to create the Master Complaint," even though that contention "ha[d] a lot to it" and was presented in at least some form to the district court.  7th Cir. Op. at 7-9.

Griffith and Sterigenics' new argument is also inconsistent with this Court's certification order and, if accepted, would render meaningless the Illinois Supreme Court's decision in this case.  As this Court recognized in its opinion, certification of a state-law question to the Illinois Supreme Court is appropriate only if, among other things, the question "'may be determinative' of the case."  7th Cir. Op. at 18 (quoting Ill. Sup. Ct. R. 20(a)); *see also Martin v. Goodrich Corp.*, 95 F.4th 475, 481 (7th Cir. 2024).  That high bar for certifying a state-law issue derives from federal courts' "respect for the burdens of our colleagues on the state bench," who "already must contend with a crowded docket of [their] own." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 671 (7th Cir. 2001).

If Griffith and Sterigenics' new argument were correct, however, this Court need not have bothered the Illinois Supreme Court, because

far from being determinative of National Union's duty to defend, its answer to the certified question would have been irrelevant to this case. Under Griffith's and Sterigenics' theory, National Union had a duty to defend *regardless* of the Illinois Supreme Court's view on the certified question, because the Illinois Supreme Court's ruling was not on the books when National Union denied a defense in 2021. Griffith and Sterigenics never made that argument in opposing certification. *See* Doc. No. 51 at 48-49. And the Court should not endorse a late-breaking argument that would make the Illinois Supreme Court proceeding in this case a pointless detour.

In any event, Griffith and Sterigenics' argument that the law was unclear when they requested a defense in 2021 is meritless. It is just a repackaging of their argument that the pollution exclusion is ambiguous as applied to permitted emissions—an argument that the Illinois Supreme Court has decisively rejected. *See* Ill. S. Ct. Op. ¶ 24 ("we will not strain to find an ambiguity where none exists"). The Illinois Supreme Court, relying on the decades-old "plain language" of the pollution exclusion, its purpose, and the 1997 *Koloms* decision, necessarily concluded that the exclusion has *always* unambiguously foreclosed an exception for

10

permitted emissions. *Id.* ¶¶ 25, 27. And any argument that an aberrant intermediate appellate court decision necessarily gives rise to ambiguity until it is corrected would be inconsistent with Illinois law. *See Ford v. Dovenmuehle Mortg., Inc.*, 273 Ill. App. 3d 240, 245 (1995) ("[T]he mere fact" that "other courts and other judges have reviewed similar contractual language and have reached differing conclusions" does not "compel" a finding of ambiguity.).

Common sense yields the same result. At the time Griffith and Sterigenics sought a defense in 2021, their emissions allegedly had caused injury, disease, and death to hundreds of Willowbrook residents; the Illinois Attorney General had sued them for polluting the environment in violation of the Environmental Protection Act; and the Illinois General Assembly had restricted ethylene-oxide emissions to negligible levels in response to their alleged wrongdoing. JA86-90; Compl. ¶¶ 50-62, *People ex rel. Madigan v. Sterigenics U.S., LLC*, No. 2018-CH-1329 (DuPage Cnty. Cir. Ct. Oct. 30, 2018); Pub. Act No. 101-22, 2019 Ill. Laws 1979 (June 21, 2019) (codified at 415 ILCS 5/9.16). As the Illinois Supreme Court's decision confirms, National Union was on unimpeachable footing when it denied coverage on the basis of the pollution exclusion.

11

This Court therefore should reject any argument by Griffith and Sterigenics that National Union has a duty to defend and remand with instructions to enter judgment for National Union.[2]

## CONCLUSION

This Court should reverse the district court's judgments with instructions for the district court to enter judgment declaring that National Union has no duty to defend Griffith and Sterigenics with respect to the Underlying Lawsuits.

Dated:  February 13, 2026

Respectfully submitted,

*/s/ Thomas H. Dupree Jr.*
Thomas H. Dupree Jr.
Nick Harper
Aaron Hauptman
Aly Cox
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 955-8500
tdupree@gibsondunn.com

---

[2] If the Court proceeded otherwise, the Court would need to consider whether Rule 19 requires dismissal, whether Sterigenics is an insured party under National Union's policies, and whether the district court erred in its analysis (or lack thereof) of Sterigenics' damages.  *See* Doc. No. 42 at 25-37, 42-51, 67-72.

## CERTIFICATE OF SERVICE

I hereby certify that, on February 13, 2026, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit using the Clerk's CM/ECF system, which will accomplish service on all participants in the case that are registered CM/ECF users.

*/s/ Thomas H. Dupree Jr.*
Thomas H. Dupree Jr.
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036